**HUGHES TOOL COMPANY, a Delaware corporation, Plaintiff,**

v.

**FAWCETT PUBLICATIONS, INC., a Delaware corporation, and Noah Dietrich, Defendants.**

**ROSEMONT ENTERPRISES, INC., a Nevada corporation, Plaintiff,**

v.

**FAWCETT PUBLICATIONS, INC., a Delaware corporation, and Noah Dietrich, Defendants.**

Court of Chancery of Delaware. New Castle.

Oct. 26, 1972.

See also Del.Ch., 290 A.2d 693.

**430**

S. Samuel Arsht, David A. Drexler, Lewis S. Black, Jr., and Lawrence C. Ashby, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Davis & Cox, New York City, for plaintiffs.

E. D. Griffenberg, Jr., and Peter M. Sieglaff, of Potter Anderson & Corroon, Wilmington, for defendant Fawcett Publications, Inc.

Charles F. Richards, Jr., and R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, and Steptoe & Johnson, Washington, D. C., for defendant Noah Dietrich.

MARVEL, Vice Chancellor:

For a period of approximately thirty-two years prior to 1957 the defendant Noah Dietrich was first an employee and later a director and the executive vice-president of Hughes Tool Company, one of the plaintiffs in the above consolidated action. In such latter positions of trust and confidence Mr. Dietrich became a close personal associate of and a financial adviser to Howard R. Hughes, the sole stockholder of Hughes Tool Company, who apparently came to lean heavily on Mr. Dietrich for aid and counsel in the handling of his personal and business problems. Eventually, there was a falling out between the two men, and in 1957 Dietrich left the employ of Hughes Tool Company, thereafter suing both Hughes and Hughes Tool Company.

However, in 1959, Dietrich and the defendants in such action agreed to settle, and as a result Mr. Dietrich entered into two contracts, both dated August 1, 1959,[1] one with Mr. Hughes, under the terms of which Hughes agreed to assist Mr. Dietrich in obtaining an unsecured loan, Dietrich for his part agreeing not to disclose any confidential information about Hughes and his corporations, and the other with Hughes Tool Company in which Dietrich promised to make himself available to such company as a consultant for a period of seven years in return for a payment to him of a fixed sum. In the agreement with Hughes Dietrich acknowledged that a disclosure by him of confidential information about Hughes and his corporation would result in irreparable harm to Hughes and Hughes Tool Company and that the latter, in addition to any other remedies they might elect to assert, should have the right to seek the enjoining of further breaches.

In other words the agreement with Howard R. Hughes contained a covenant which specifically provided that Dietrich was not to disclose any information of any nature about the life and affairs of Hughes, the Hughes Tool Company, or of any of its affiliates, Mr. Dietrich having covenanted not to use for his own benefit or to permit the disclosure to others of any information of any nature, acquired or seemingly acquired as a result of his employment by or confidential relationship with Mr. Hughes, Hughes Tool Company, or any corporate affiliate, of any biographical or historical book, article, or other type of writing with respect to the life or affairs of Howard Hughes, or the history and affairs of Hughes Tool Company. Mr. Dietrich further agreed to surrender to Hughes, his attorneys or agents, any manuscripts or other documentation of any or all of the material above alluded to.

---

1. In its briefs and pleadings Hughes Tool Company treats the two agreements as if they were a single contract, the consideration in the contract with Hughes Tool Company allegedly supporting the covenants in the contract with Hughes. Thus, argues Hughes Tool Company, the sums to be paid to Dietrich under the terms of the agreement with it furnish consideration for the restrictive covenant contained in the Hughes agreement.

The Hughes Tool Company agreement, on the other hand, merely provided, as noted above, that Dietrich should make himself available to such corporation as a consultant for a period of seven years, in return for which he was to be paid the total sum of $694,000 by Hughes Tool Company in periodic installments.

Notwithstanding the restrictive covenant in the Hughes agreement, Dietrich has written and caused to be published an account of his personal and business association with Hughes, which book, a copy of which has been placed in the record, relates intimate and at times derogatory details of Hughes' private and business life to which Dietrich was allegedly privy. Such book has been published by Fawcett Publications, Inc., the defendant in the second complaint in the above consolidated action, under the title "Howard, The Amazing Mr. Hughes".

Following such publication, the plaintiffs Hughes Tool Company and Rosemont Enterprises, Inc. (the latter having been made the assignee in 1965 of exclusive rights to exploit Hughes' name, likeness or any account of his life or personality) brought these actions, claiming that their rights under the agreements referred to above had been infringed by actions of the defendants Dietrich and Fawcett Publications, Inc. Defendants have moved to dismiss such complaints and this is the Court's opinion on such motions.

In pressing their motions to dismiss the complaints herein, defendants point out first of all that the restrictive covenant alluded to above which purportedly binds Mr. Dietrich not to disclose information concerning Mr. Hughes' personal and business affairs is contained solely in the Hughes agreement with Dietrich. They accordingly argue that Hughes is an indispensable party to this consolidated action and must be joined before these actions may proceed further. They further contend that Hughes Tool Company is neither a party to nor a third party beneficiary of the Hughes agreement and further that Rosemont Enterprises, Inc. is not an assignee in any manner of any right of enforcement of such agreement. Thus, it is argued, neither of the present plaintiffs has standing to enforce the terms of the Dietrich agreement not to disclose biographical information concerning Hughes. Defendants go on to argue that, in any event, the form of restrictive covenant here in issue is invalid as constituting an unreasonable restraint on Dietrich's right of free speech and thus is violative of the first amendment to the Constitution of the United States.

■ It is a fundamental principle governing the conduct of litigation in this Court that it has no jurisdiction of a cause of action as to which the party seeking relief has an adequate remedy at law, 10 Del.C. § 342, and see In re Markel, Del. Supr., 254 A.2d 236. Furthermore, the question as to whether or not equitable jurisdiction exists is to be determined by an examination of the allegations of the complaint viewed in light of what the plaintiff really seeks to gain by bringing his cause of action, Diebold v. Commercial Credit, Del.Supr., 267 A.2d 586. Plaintiffs argue, however, that the holding in the cited case was that this Court's determination as to whether or not it has jurisdiction of an asserted claim is controlled by an examination of the prayers of the complaint. They contend that because the relief which they pray for appears to be clearly equitable in nature, this Court must necessarily exercise its allegedly established jurisdiction over the present actions. I am of the opinion, however, that the ruling in the cited case does not purport to alter the established rule that the prayers of a complaint do not rigidly control this Court's inquiry into what it is that a plaintiff really seeks in filing a complaint and that this Court should, when required, go behind a facade of prayers in order to determine whether the relief sought is in fact equitable or

legal.[2] See also Jefferson Chemical Co. v. Mobay Chemical Co., Del.Ch., 253 A.2d 512, and Highlights for Children, Inc. v. Crown, 41 Del.Ch. 244, 193 A.2d 205.

Ordinarily a party aggrieved by a claimed breach of contract or injured as a result of a tort has a complete and adequate remedy at law in the form of an action for damages, Illinois Finance Co. v. Interstate Rural Credit Ass'n, 11 Del.Ch. 349, 101 A. 870, and Cochran v. F. H. Smith Co., 20 Del.Ch. 159, 174 A. 119, and defendants contend that there is nothing which plaintiffs really seek in their consolidated complaints which could not be gained in actions at law. Thus, it appears that the prayers of the Hughes Tool Company complaint seek an order requiring that the defendants Dietrich and Fawcett account to plaintiff for all sums paid to Dietrich as a result of the 1959 settlement above alluded to as well as for all profits derived by such defendants as a result of their alleged wrongful conduct, and the impressing of a trust in favor of Hughes Tool Company as to all profits derived by the defendants from the publication of "Howard, The Amazing Mr. Hughes." And while these prayers for relief are cast in equitable form, the complaint does not allege that the accounting sought is complicated or mutual, or between fiduciaries, Pan American Trade v. Commercial Metals, 33 Del.Ch. 425, 94 A.2d 700, or in fact that plaintiff is entitled to any relief other than damages suffered by reason of Dietrich's alleged breach of covenant as well as by Fawcett's alleged inducement of such breach. In short, what Hughes Tool Company is really seeking, in my opinion, is obtainable at law, a fact which it seeks to camouflage by the use of prayers for an accounting and for the establishment of a constructive trust. See Jefferson Chemical Company v. Mobay Chemical Co., supra.

The Rosemont Enterprises complaint recites substantially the same factual background as that contained in the complaint of Hughes Tool Company but adds thereto allegations concerning the agreement between Hughes and Rosemont. It goes on to allege that publication of the Dietrich manuscript constitutes unfair competition and is misleading inasmuch as it deals primarily with the life of Dietrich and not of Hughes, and finally that it has resulted in the unjust enrichment of Dietrich and Fawcett. However, assuming some property right in plaintiff, what is actually sought are damages. Rosemont's prayers for relief are substantially of the same type as those of Hughes Tool Company except that a prayer is added for the entry of an order directing defendants to surrender all rights in the Deitrich book to Rosemont, but, of course, Rosemont's rights are no greater than those of its assignor. Significantly, no effort has been made in this case, since its inception, to seek any type of injunctive relief concerning the Dietrich manuscript which has been published, sold and presumably read since the inception of this case. It is also clear that literary property may be recovered by an action at law, 18 Am.Jur.2d, Copyright and Literary Property, § 135, and see II Wooley, Delaware Practice, §§ 1516, 1524 and 1562, and before plaintiffs can rely on the theory of avoidance of a multiplicity of suits they must establish at law that they have property rights in the Dietrich manuscript.

In conclusion, because I am of the opinion that the complaints in the above consolidated actions, properly read, state causes of actions for which adequate remedies are available at law, it would be inappropriate to pass on defendants' other contentions alluded to above, such as the alleged necessity of Mr. Hughes' presence as a

---

2. "The subject-matter jurisdiction of the Court of Chancery depends solely, at this (pleading) stage, upon the allegations of the complaint and a determination of what the plaintiff really seeks by the complaint; for it is settled that the existence of jurisdiction is to be ascertained as of the time of the filing of the complaint." Diebold v. Commercial Credit, supra.

party, questions of assignment, the rights of a claimed third party beneficiary, as well as the defendant Dietrich's claimed right of free speech.

On notice, an appropriate form of order may be submitted.