M. Lowell HARMAN, Plaintiff
Below, Appellant,

v.

MASONEILAN INTERNATIONAL, INC.,
Studebaker-Worthington, Inc. and
Worthington Corporation, Defendants
Below, Appellees.

Supreme Court of Delaware.

Submitted Feb. 9, 1981.

Decided Feb. 9, 1982.

Joseph A. Rosenthal (argued), of Morris & Rosenthal, P. A., Wilmington, for plaintiff-appellant; Wolf, Popper, Ross, Wolf & Jones, New York City, of counsel.

Jeffrey B. Rudman (argued), of Hale & Dorr, Boston, Mass., of counsel, and A. Gilchrist Sparks, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant-appellee Masoneilan Intern., Inc.

Rodman Ward, Jr. (argued), Carolyn Berger and James G. Wiles of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for

defendants-appellees Studebaker-Worthington, Inc. and Worthington Corp.

Before DUFFY, QUILLEN and HORSEY, JJ.

HORSEY, Justice, with DUFFY, Justice, joining: **

This appeal from our Court of Chancery raises an issue not explicitly addressed by this Court in *Sterling v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107 (1952) and its progeny. Specifically, the issue is whether a complaint alleging breach of fiduciary duty by a majority shareholder in approving a merger allegedly fraudulent to the minority states a cause of action cognizable in equity when monetary relief is the only practicable remedy available and when defendants establish that the minority shareholders have themselves overwhelmingly approved the merger.

The Chancellor dismissed the complaint for lack of subject matter jurisdiction. He ruled: that plaintiff was barred as a matter of law by laches from rescission—the "only" equitable remedy sought;[1] that the complaint failed to state a claim in equity's exclusive jurisdiction for breach of fiduciary duty of majority to minority shareholders; and that plaintiff had an adequate remedy at law. The Chancellor so ruled for two reasons: (1) because the merger required and received the approval of a majority of the minority shareholders voting as a class; and (2) because he found damages to be the only feasible relief. We reverse.

I

■ For the purposes of this appeal, the factual allegations of the complaint must be taken to be true and all inferences therefrom construed in plaintiff's favor. *duPont*

*v. duPont*, Del.Supr., 90 A.2d 467 (1952); *Jefferson Chem. Co. v. Mobay Chem. Co.*, Del.Ch., 253 A.2d 512 (1969). So viewed, the pertinent facts as pleaded are:

Masoneilan International, Inc. (Masoneilan) was a Delaware corporation engaged in the manufacture and service of automobile process control equipment. Masoneilan first offered its common stock for public sale in 1971. By May 26, 1977, the date of the merger, Masoneilan had outstanding two types of common stock: approximately 400,000 shares of publicly traded stock and 1,470,000 shares of Class B common stock. All of the Class B stock was owned by Worthington Corp. (Worthington), a wholly owned Delaware subsidiary of Studebaker-Worthington, Inc. (S–W), a Delaware corporation. The holders of the publicly traded common stock were entitled to one vote per share while the holders of Class B stock were entitled to four votes for each share held. Through its ownership of all the Class B stock, Worthington exercised more than 93 percent of the total voting power of Masoneilan and elected the majority of Masoneilan directors. By its control of Worthington, S–W controlled Masoneilan.

On May 26, 1977 Masoneilan merged with another Delaware corporation, a wholly owned subsidiary of S–W in a stock-for-stock exchange. Masoneilan shareholders received .8471 of a share of S–W stock for each share of Masoneilan stock. The merger was approved by vote of about 64 percent of the outstanding minority shares with 7 percent opposed. Prior to the minority's vote, a proxy statement was issued by Masoneilan, endorsing the merger.

The present action was filed in July 1979 by M. Lowell Harman, a former Masoneilan shareholder, on behalf of himself and other Masoneilan shareholders.[2]

---

** QUILLEN, Justice has filed a concurring opinion joining in the judgment.

1. As will appear, the complaint also seeks judgment declaring the merger to be "void", an accounting, damages and any other appropriate relief.

2. A class action alleging basically the same matters set forth in the present complaint had been previously commenced by another minority shareholder in the New York State courts in October, 1976. Upon appeal from the Trial Court's decision holding the New York action to be properly maintainable as a class action, the New York Appellate Division reversed.

The complaint alleges that the three corporate defendants, Worthington, its parent, S–W, and Masoneilan, breached their respective fiduciary *and* common law duties owed Masoneilan's minority shareholders in two respects: (1) by planning and approving a merger that served no bona fide business purpose, other than to benefit Worthington and S–W, and that was designed to eliminate the minority shareholders of Masoneilan from further meaningful equity participation for a grossly inadequate consideration; and (2) by causing the publication and dissemination of a proxy statement that by its omissions was materially false and misleading so as to be "coercive" upon the minority shareholders.

In support of its "inadequate exchange" charge, the complaint alleges that defendants first deliberately depressed the market value of Masoneilan stock by failing to pay adequate dividends and then used the stock's depressed value to fix the exchange ratio for S–W stock; and then failed to take into consideration, in fixing the exchange ratio, Masoneilan's historic and projected growth rate, its price-earnings ratio and its bright prospects for future sales and earnings.

In support of its proxy statement charge, the complaint alleges that Masoneilan's proxy statement soliciting approval of the merger was materially false and misleading in its failing to disclose to the minority shareholders five items of pertinent information; i.e., (1) management's prediction of near-term significant increases in Masoneilan's sales and earnings; (2) pertinent price/earnings ratio information; (3) the existence of a conflict of interest between Masoneilan's management and its public shareholders (evidenced by the fact that certain directors favored, for personal tax reasons, a "lower tax-free exchange ratio" over a cash purchase at a higher price); (4) Masoneilan's President's opinion (previously privately expressed) that its minority shareholders were entitled to a cash price of not less than $80 per share, or about 16 times earnings, in contrast with the $39.60 value of the proposed exchange of stock; and (5) that the merger served no proper business purpose.[3]

The complaint seeks alternative forms of relief; a declaration that the merger is void; an order permitting each class member the option of returning the S–W shares received in the merger for the Masoneilan shares relinquished; and an accounting.

Four days after plaintiff filed his complaint, on July 24, 1979, S–W and McGraw-Edison (McGraw), a Delaware corporation, issued a joint press release stating that they had reached an agreement to merge. That merger, accomplished on October 24, 1979, resulted in S–W becoming a wholly owned subsidiary of McGraw-Edison, with all S–W shareholders (including former Masoneilan shareholders) acquiring the right to receive cash. S–W then ceased to be a publicly-traded stock on the New York Stock Exchange.

II

In support of its dismissal[4] of the complaint for lack of subject matter jurisdiction, the Court below made the following findings and conclusions: (1) that laches barred plaintiff from rescission, the only equitable relief sought; (2) that damages were plaintiff's only feasible relief and

The Appellate Division concluded that the New York plaintiff was not an adequate representative of the class and that since the litigation involved the merger of Delaware corporations, Delaware courts should adjudicate it. Within one month of that decision, *Tanzer v. Turbodyne Corp.*, N.Y.App.Div., 68 A.D.2d 614, 417 N.Y.S.2d 706 (1979), plaintiff instituted the present action in the Delaware courts.

3. The complaint also named as defendants Masoneilan's principal officers and directors, sev-

eral of whom were at the time also officers and directors of S–W. However, the individual defendants were dismissed as parties, without objection by plaintiff, apparently due to doubt as to their being subject to the Court's jurisdiction.

4. The Court dismissed the complaint, "subject to the right of the plaintiff to remove this case to a court of competent jurisdiction under the provisions of 10 *Del.C.* § 1902."

what plaintiff in reality sought; (3) that the complaint failed to state a *Singer*[5] claim within equity's exclusive jurisdiction—for lack of evidence that Worthington, the majority shareholder, through its director designees, had exercised control over the merger; and (4) that plaintiff had an adequate remedy at law.

Urging affirmance of the decision below, defendants make essentially two arguments. *First*, they argue that the complaint states only a claim at law for fraud or deceit. This is so, defendants say, because the essence of plaintiff's claim is that defendants deprived plaintiff (and others similarly situated) of an adequate consideration for their stock through defendants' allegedly fraudulent and coercive acts. Such allegation, defendants say, states, at best, a claim within equity's concurrent, not its exclusive, jurisdiction; hence, the Chancellor correctly dismissed the suit because: (a) plaintiff clearly has an adequate remedy at law for damages; (b) plaintiff does not allege otherwise; and (c) the only equitable relief sought—rescission—is neither feasible nor available due to plaintiff's laches.

*Second*, defendants argue that the complaint's allegations of Worthington's breach of its fiduciary duty of fairness to the minority in a merger context fails to state a cognizable "fairness" claim under the *Sterling-Singer* line of cases. To state such a claim, defendants say that plaintiff was required to allege that Worthington exercised its voting control to impose the merger on the minority and did so for an improper purpose. Defendants point to uncontroverted facts that the merger was structured to require for its approval the affirmative vote of a majority of the minority public shareholders voting as a class and that such "independent" approval was overwhelmingly obtained.[6] Thus, defendants say the complaint was properly dismissed.

Defendants thereby construe Delaware law relating to equity's recognition of a fiduciary duty of majority to minority shareholders in a merger context to be that no actionable claim for breach of fiduciary duty lies within equity's *inherent* or *exclusive* jurisdiction where monetary relief is the only available remedy and where it can be demonstrated that the majority shareholder has not invoked the corporate machinery to impose the merger on the majority.[7]

Plaintiff makes two responses: *First*, assuming damages to be the only feasible relief, pertinent Delaware case law does not support defendants' position that a claim arising out of a majority shareholder's alleged breach of fiduciary duty to the minority states at most a claim lying within equity's concurrent, rather than its exclusive, jurisdiction due to the availability of an action at law for fraud or deceit. *Second*, assuming the correctness of defendants' contention—that a majority shareholder's exercise of the corporate machinery to effect a merger is a prerequisite to finding equity to have exclusive jurisdiction—the complaint meets this exercised control test as well. Plaintiff says that the Court below and defendants have ignored the complaint's averments that Worthington and its designees *used* their controlling position to "coerce" the minority's approval of the merger through a materially misleading proxy statement. Plaintiff argues that such allegations, if established, vitiate defendants' reliance on the minority's "independent" approval of the merger. And without the minority's truly independent approval of the merger, plaintiff says that

---

5. *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969 (1977).

6. However, the complaint does not refer to the merger's requirement of the public shareholders' independent approval. Such facts were brought before the Court by affidavit of an officer of Masoneilan filed "in support of defendants' motion to dismiss", stating that the merger of Masoneilan into S–W was approved by "overwhelming" vote of Masoneilan's public shareholders, with 257,397 shares voted in favor of the merger and 28,200 shares in opposition [of the approximately 400,000 issued and outstanding shares of Masoneilan's publicly traded common stock.]

7. Defendants appear to contend that such a finding necessarily dispenses with any allegation of improper purpose for the merger.

the complaint states a classic *Singer* "fairness" claim that lies in equity's exclusive jurisdiction regardless of whether the ultimate available remedy be limited to an accounting and damages.

Bearing in mind that this case is before us on motion to dismiss, we hold: that the complaint states a *Singer* claim in equity for breach of fiduciary duty of a majority shareholder to the minority shareholder; and that the claim lies within equity's inherent or exclusive jurisdiction even though damages through an accounting *may* be the only feasible relief. We conclude that defendants' reliance on the minority shareholders' approval of the merger does not warrant dismissal—given plaintiff's allegation that the public shareholders' approving vote was "coerced" through a materially false and misleading proxy statement. Finally, we conclude that the Court erred in ruling on motion to dismiss that any claim for rescissional relief (which may include rescissional damages) was barred by laches.

### III

Defendants argue that neither the Court of Chancery, nor this Court, has ever explicitly addressed the question of equity's scope of jurisdiction over *Singer* "fairness" claims. Defendants say that *Singer* and its progeny mask rather than confront the jurisdictional issue here raised. And defendants say that if we apply time-honored tests for determining equity's jurisdiction over such claims for breach of fiduciary duty in a corporate context, we must conclude that the Chancellor properly dismissed the suit on jurisdictional grounds. Thus, defend-

ants' argument requires us, at the outset, to review the *Sterling-Singer* development of the law concerning a majority shareholder's fiduciary duty to the minority in a merger context—with defendants' jurisdictional argument in mind.

In *Sterling, supra*, this Court recognized as a "settled" rule of law in Delaware that a majority shareholder and its director designees occupy a fiduciary relationship to the minority shareholders from which springs a duty of fairness in dealing with the minority's property interests. *Sterling* also ruled that where the majority stands "on both sides" of a transaction, the majority has the burden of establishing the transaction's "entire fairness" to the minority. 93 A.2d at 110.[8] *See also Keenan v. Eshleman*, Del. Supr., 2 A.2d 904 (1938); *Gottlieb v. Heyden Chem. Corp.*, Del.Supr., 90 A.2d 660 (1952); *Bennett v. Breuil Petroleum Corp.*, Del.Ch., 99 A.2d 236 (1953).

In *Singer, supra*, we applied the *Sterling* fiduciary duty rule of fairness required of a majority shareholder to the minority to a "cash-out" merger under 8 *Del.C.* § 251. And we also rejected the contention that the complaint failed to state a claim for equitable relief. In *Singer*, as here, the complaint attacked a merger not simply for inadequacy of consideration but for lack of any business purpose other than to "freeze out" the minority shareholders. There, we found ample Delaware case precedent for a court of equity "to scrutinize a corporate act [of a majority shareholder or its management designee] when it is alleged that its purpose violates the fiduciary duty owed to minority stockholders."[9] 380 A.2d at

---

**8.** *Sterling* involved a proposed stock-for-stock merger under the forerunner of 8 *Del.C.* § 251 of a subsidiary (Mayflower Hotel) into its parent (Hilton) which owned ⅚ of Mayflower's stock and controlled Mayflower's entire board. At a separate meeting of Mayflower's shareholders, the terms of the merger had been approved through Hilton's dominant vote. Dissenting minority shareholders of Mayflower then brought suit to enjoin the merger claiming that its terms were grossly unfair to Mayflower's minority shareholders and bad faith by Mayflower's Hilton-controlled director in approving the merger. On the basis of "volumi-

nous" depositions and affidavits, the Chancellor, after hearing, found no fraud or bad faith and also that the plan was fair to the minority shareholders of Mayflower. Therefore, injunctive relief was denied. On appeal, this Court affirmed, finding the Chancellor's findings of fairness in terms of the merger's exchange terms to be supported by substantial evidence.

**9.** The decisions referred to were: *Schnell v. Chris-Craft Industries, Inc.*, Del.Supr., 285 A.2d 437 (1971) (involving management's advancement of the date of an annual meeting in compliance with statutory procedures but alleged to have been done for the purpose of perpetu-

979. And we held that a complaint seeking to nullify a corporate merger on the ground that it breached a majority shareholder's duty to the minority stated an actionable claim in equity for breach of fiduciary duty.[10] Overruling the Court of Chancery's dismissal of the suit for failure to state a claim upon which relief could be granted, we stated:

"We hold the law to be that a Delaware Court will not be indifferent to the purpose of a merger when a freeze-out of minority stockholders on a cash-out basis is alleged to be its sole purpose. In such a situation, if it is alleged that the purpose is improper because of the fiduciary obligation owed to the minority, the Court is duty-bound to closely examine that allegation even when all of the relevant statutory formalities have been satisfied." 380 A.2d at 979.

And we held:

"... that a § 251 merger, made for the sole purpose of freezing out minority stockholders, is an abuse of the corporate process; and the complaint, which so alleges in this suit, states a cause of action for violation of a fiduciary duty for which the Court may grant such relief as it deems appropriate under the circumstances." 380 A.2d at 980.

Thus, in *Singer* we applied the rule in *Sterling* to sustain equity's jurisdiction over suit by a minority shareholder against a majority shareholder for alleged breach of fiduciary duty to the minority in a § 251 "cash-out" merger. And we did so notwithstanding the majority-dominated corporation's compliance with all legal requirements, i.e., with 8 *Del.C.* § 262, providing dissenting shareholders with appraisal rights.

The fiduciary duty of a majority shareholder to the minority in a Delaware corporation was next considered in another "freeze-out" of minority shareholders in a § 251 merger context in *Tanzer v. International General Industries, Inc.*, Del.Supr., 379 A.2d 1121 (1979).[11] The principal issue in *Tanzer* was whether the requirement of a proper and bona fide business purpose for a merger might be found in and relate solely to the business interest of the controlling shareholder and not necessarily include the interests of the corporation itself. Finding substantial evidence to support the Chancellor's finding, after evidentiary hearing, that the majority's approval of the merger was supported by a business reason related to the majority's best interest, we affirmed the Chancellor's denial of injunctive relief.

However, notwithstanding a proper business purpose finding, we remanded the *Tanzer* appeal to the Court of Chancery for a further "fairness" hearing. The purpose of the further hearing was to determine whether the majority shareholder had met its "entire fairness" fiduciary duty to the

---

ating management in office); *Condec Corporation v. Lunkenheimer Company*, Del.Ch., 230 A.2d 769 (1967) (suit to cancel stock issued by management for the alleged purpose of retaining corporate control); and *Bennett v. Breuil Petroleum Corp., supra*, (complaint of minority shareholder that dominant shareholder caused the issuance of new shares to impair the former's interest and to force him out of the corporation on management's terms).

10. We rejected a three-fold contention of defendants that the controlling shareholder and its designee directors had met their fiduciary duty to the minority stockholders: (1) by fully complying with § 251's merger procedure; (2) by offering "fair value" in cash for the minority's shares, as to which no fraud was claimed; and (3) by relegating dissatisfied shareholders to their appraisal rights under 8 *Del.C.* § 262, which defendants argued was the exclusive

remedy of minority shareholders who dissented.

11. In *Tanzer*, minority shareholders of Kliklok Corporation sought unsuccessfully to enjoin the majority shareholder, International General Industries, Inc. (IGI), owner of 81% of Kliklok's outstanding stock from acquiring 100% of the stock through merger of Kliklok with a wholly owned subsidiary of IGI. Under the terms of the merger, the minority shareholders were offered a cash price per share, with dissenters being entitled to their statutory appraisal rights under 8 *Del.C.* § 262. Affirming the Chancellor's denial of plaintiff's application for a preliminary injunction, we found the Chancellor to have made significant findings of fact (as well as conclusions of law as to plaintiffs' right to a preliminary injunction) for which there was adequate supporting evidence.

minority as to "all aspects of the transaction." 379 A.2d at 1125.

Elaborating upon the above statement in *Tanzer*, this Court in *Roland Intern. Corp. v. Najjar*, Del.Supr., 407 A.2d 1032 (1979) extended the rule in *Singer* to a short-form "cash-out" merger under 8 *Del.C.* § 253. We thereby sustained a complaint brought in equity by minority shareholders attacking the merger—even though the complaint sought only money damages; and we affirmed [12] the Vice Chancellor's denial of defendants' motion to dismiss the complaint for failure to state a claim for relief. In doing so, we rejected defendants' contentions—that the majority-dominated corporation's compliance with § 253 implied a proper purpose for the merger; that the merger's approval by 97.6 percent of the corporations' outstanding shares dispensed with the need of a "proper purpose" hearing; and that the dissenting shareholders' appraisal rights under 8 *Del.C.* § 262 provided them with adequate relief. Holding that the fiduciary duty of a majority shareholder to the minority applied equally to a short-form of merger under § 253 as it had been held to apply to a § 251 merger under *Singer*, we stated:

> "That argument misses the point of *Singer*. The law of fiduciary duty, on which *Singer* is based, arises not from the operation of § 251 but independent of it. . . . As we have attempted to make plain, the duty arises from long-standing principles of equity and is superimposed on many sections of the Corporation Law, including, we think, § 253 . . . [W]e find nothing magic about a 90% ownership of outstanding shares which would eliminate the fiduciary duty owed by the majority to the minority. That duty existed in *Singer*, when the parent corporation owned about 84% of the target corporation's stock . . . To state it another way, the shortcut to merger afforded by § 253 may not be used to short-circuit the law of fiduciary duty. Cf. 46 *Geo.Wash.L. Rev.*, supra at 892. The duty of the ma-

jority is not diluted as control is strengthened nor is the right of the minority determined by how small it is. Thus the fiduciary obligation owed in the context of a merger, be it long or short, is singular, and falls alike on those who control 'at least 90% of the outstanding shares,' § 253, and those who control a majority but less than 90%, § 251." 407 A.2d at 1036.

While the Court of Chancery's jurisdiction over the claim in *Roland* was not specifically addressed in the majority opinion of this Court, we did note that plaintiffs sought no relief other than money damages. While Justice Quillen, in dissenting, found the complaint to fail to state a claim for equitable relief, his explicit rationale for dismissal was not equity's lack of jurisdiction over the fairness claim but rather the adequacy of plaintiffs' appraisal remedy which lay in equity. Moreover, this Court in *Roland* emphasized the majority shareholder's duty, apart from demonstrating a proper purpose for the merger, to show the *entire* fairness of all aspects of the merger to the minority shareholders.

> "In other words, the fiduciary duty exists even if the majority has a *bona fide* purpose for eliminating the minority; . . [T]he duty of the majority is to treat the minority fairly." 407 A.2d at 1035.

The principles enunciated in the *Sterling* and *Singer* line of cases had their most recent application in *Weinberger v. UOP, Inc.*, Del.Ch., 409 A.2d 1262 (1979) in a context that defendants say confirms the correctness of the Chancellor's dismissal of this complaint. There, the initial complaint attacking a "freeze-out" merger of minority shareholders was dismissed by Vice Chancellor Grover C. Brown for failure to state a claim for relief. The complaint as originally drawn had simply charged that the terms of the cash-out merger proposed by the majority shareholder were unfair for inadequacy of consideration *and* that the merger lacked a business purpose apart from elimi-

---

**12.** Our decision by the Court en banc was 4 to 1, with Justice Quillen dissenting.

nating the minority shareholders.[13] Dismissal was premised on three factors: (1) the terms of the merger made its acceptance or rejection dependent on the vote of the minority shareholders; (2) the minority shareholders' overwhelming approval of the merger; and, most importantly, (3) the absence of any allegation in the original complaint that the majority had used its control of the corporate machinery to eliminate the minority. As to such a complaint, the Vice Chancellor concluded: (a) that the rationale of *Singer, Tanzer* and *Roland* did not control; and (b) that the Court was under no *Singer* duty to scrutinize the entire transaction for fairness to the "otherwise vulnerable" minority. Thus, the complaint was found not to state a *Sterling-Singer* fairness claim for breach of fiduciary duty because the majority shareholder was not charged with using its controlling position over the corporate machinery to accomplish the merger.[14]

### IV

■ Defendants argue that the case at bar is indistinguishable from *Weinberger*; and, hence, the Chancellor's dismissal of the instant complaint was also proper. We disagree.

Here, as in *Weinberger*, the merger was structured to require its approval by a majority of the minority shareholders. But the complaint before us contains an element missing from the original *Weinberger* complaint, namely, its allegation that the minority shareholders' vote was "coerced" by a materially false and misleading proxy statement relating to the merger. Thus, the instant complaint goes beyond the initial complaint in *Weinberger* by alleging, in effect, that the majority did exercise its control over the corporate machinery to obtain the minority's approval of the merger through improper means.

As previously noted, the complaint before us alleges that the proxy statement disseminated to the minority shareholders was misleading in failing to inform the shareholders: (1) that the defendant directors of Masoneilan favored a lower tax-free exchange ratio of Masoneilan common stock for S–W stock over higher cash purchase; and (2) that the minority shareholders would as a consequence of the merger own a substantially smaller percentage of equity in S–W than they did in Masoneilan. The complaint further alleges that defendants falsely represented that the exchange ratio was fair and equitable. Thus, the complaint charges defendants with acts of misconduct in using their majority position to achieve the merger. Accepting such allegations of the non-moving party to be true, as we must, on defendants' motion to dismiss, the minority shareholders state that they were misled so as not to have been given, in reality, an effective right to veto the merger.

We must agree with plaintiff that his allegations distinguish this complaint from the factual context in which *Weinberger* was initially decided.[15] We conclude that

---

**13.** Sigco, Inc., a wholly owned subsidiary of Signal Corporation, merged with UOP, Inc. The minority shareholders of UOP received cash in exchange for their shares. The merger was structured so that acceptance or rejection of the merger depended upon the vote of minority shareholders who subsequently overwhelmingly approved the merger. Defendant, UOP, moved to dismiss the complaint for failure to state a claim upon which relief may be granted. The Vice Chancellor granted dismissal, finding no *Singer* violation. The basis for his ruling was that relied upon by defendants in this case: namely, that because the minority shareholders had through their voting power the ability to veto the merger, the majority shareholders could not be said to have used their power or control to effect the merger.

**14.** However, the Vice Chancellor was careful to warn that a merger may not become "immune from attack by the simple device of structuring the merger agreement so as to require that it be approved by a majority of the minority shareholders." 409 A.2d at 1267.

**15.** The complaint in *Weinberger* was subsequently amended and, as amended, was found by the Vice Chancellor to state a justiciable *Sterling-Singer* fairness claim for relief. As amended, the *Weinberger* complaint is comparable to the complaint in this case. The amended *Weinberger* complaint alleged that the majority shareholder has disseminated proxy materials to the minority shareholders that contained material misrepresentations as well as material omissions which tainted the

the complaint before us states a *Sterling-Singer* claim in equity for breach of fiduciary duty of a majority shareholder to the minority shareholders. The complaint alleges all the essential elements of a *Singer* fairness claim: that the rate of exchange set for Masoneilan shares held by minority shareholders was grossly inadequate; that the merger lacked any business purpose other than the elimination of the minority interest; and that the majority shareholder used its control over the corporate machinery to effect a merger through dissemination of a materially false and misleading proxy statement.[16] Further, the complaint negates defendants' assertion (based on facts outside the complaint)[17] that the minority shareholders' class approval of the merger is legally sufficient to sustain the Chancellor's dismissal of the suit.

## V

We turn to defendants' two-prong argument (a) that plaintiff's claim lies within equity's concurrent rather than its inherent or exclusive jurisdiction; and (b) that since plaintiff has an adequate remedy at law, the suit was properly dismissed. The first argument is more difficult to grapple with than the second; but we conclude that both must be rejected.

The thrust of defendants' concurrent jurisdictional argument is this: that in testing equity's exclusive jurisdiction over a fairness claim for breach of fiduciary duty asserted against a majority shareholder and corporate management, the critical inquiry relates not to the nature of the right or claim asserted but to the available remedy.[18] Applying that approach to this complaint, defendants say the claim stated does not lie in equity's exclusive jurisdiction; *and* because an adequate remedy lies at law, the suit was properly dismissed. For supporting authority, defendants refer us to ancient authorities[19] and basic principles on the division between law and equity.

Defendants argue that our Court of Chancery's jurisdiction is limited to two types of claims: (a) claims not recognized at law; and (b) claims for which the remedy available at law is insufficient. Defendants define equity's exclusive jurisdiction over causes solely in terms of claims that are not otherwise recognizable at law. And because this Court has recognized certain claims for breach of fiduciary duty to fall within equity's *concurrent* jurisdiction, *Bovay v. H. M. Byllesby & Co.*, Del.Supr., 38 A.2d 808 (1944), defendants argue that *all* breach of fiduciary duty claims—including this suit—fall within equity's concurrent and not its exclusive jurisdiction.

minority's approval of the merger. The amended complaint further charged a conflict of interest as well as a conspiracy with respect to the opinion of an investment banking firm that the proposed merger price per share was fair to the minority shareholders. The amended complaint also alleged that UOP's Board, controlled by Signal, breached its fiduciary duty to the minority shareholders by not requiring an appraisal as to the value of UOP's shares prior to the agreement to merger and in failing to negotiate for a higher price per share for the minority's shares. *Weinberger v. UOP, Inc.*, Del.Ch., 426 A.2d 1333 (1981).

16. *See Fisher v. United Technologies Corp.*, Del.Ch., C.A. 5847–79 (V.C. Hartnett 1981) denying summary judgment for defendants as to a "fairness" claim by minority public shareholders, notwithstanding their approval of the merger. The Court held that the complaint's allegations of fraud and misrepresentation through valuation of the stock and lack of a

proper purpose for the merger stated a claim for breach of fiduciary duty and raised factual issues that defeated summary judgment.

17. We pass over this technical basis for reversal of the dismissal for being grounded on facts beyond the complaint.

18. *See* 2 Spence, *Equitable Jurisdiction of the Court of Chancery*, *408. (footnote omitted).

19. Defendants rely on Blackstone's statement that the Chancellor, during the reign of King Edward I, "devis[ed] new writs, directed to the Courts of Common Law, to give remedy in cases where none was before administered." 3 W. Blackstone, *Commentaries*, * 49; that by the early 18th Century jurisdiction of England's Court of Chancery concerned matters "not cognizable in a court of law", and existed to give relief not obtainable at law. 1 W. Blackstone, *Commentaries*, * 93.

We think defendant's argument contains two fallacies: (1) an incorrect definition of equity's inherent *or* exclusive jurisdiction; and (2) an oversimplification of the law that all claims for breach of fiduciary duty in a corporate context necessarily fall within equity's concurrent, and none within its inherent or exclusive, jurisdiction.

10 *Del.C.* § 341 codifies the Court of Chancery's inherent or exclusive jurisdiction. Section 341 provides, "The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity." In contrast, 10 *Del.C.* § 342 codifies the common law mandate as to equity's concurrent jurisdiction. Section 342 provides, "The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court of jurisdiction of the State." Thus, § 342 states the converse of our Court of Chancery's concurrent jurisdiction over claims for which the remedy available at law is insufficient. *duPont v. duPont*, Del.Supr., 85 A.2d 724 (1951); *Glanding v. Industrial Trust Co.*, Del.Supr., 45 A.2d 553 (1945); *Hughes Tool Co. v. Fawcett Publications, Inc.*, Del.Ch., 297 A.2d 428 (1972).

Defendants rely upon dictum in *Bovay, supra*, as conclusively establishing that a claim against corporate management for breach of fiduciary duty and fraud lies only within equity's concurrent and not within its exclusive jurisdiction. Defendants also rely upon a statement from Pomeroy that "jurisdiction of Equity in . . . cases of fiduciary relations is concurrent and depends upon the superiority of its remedies. . . ." Pomeroy, *Equity Jurisdiction*, § 158 (5th Ed., 1941).

It is true that in *Bovay* the Court stated that a claim for breach of trust arising by operation of law (directors of a corporation being treated as trustees for the stockholders), "is theoretically within the concurrent jurisdiction of the law and equity courts." 38 A.2d at 814. However, the question in *Bovay* was whether the Chancellor had correctly dismissed the suit by applying a statute of limitations governing equivalent actions at law. Holding that dismissal was error, the Chief Justice ruled that the suit against directors for breach of their fiduciary duty of "utmost good faith and fair dealing" towards their stockholders was governed by equitable principles. And notwithstanding that the complaint sought only money damages through an accounting, the Court concluded that the suit properly lay in equity, stating:

"An accounting is prayed; and a proper accounting and the correct inferences to be drawn from the facts developed are matters only for a court of equity in which a careful, patient and extended examination of all of the evidence can be made and a just conclusion reached by a trained mind in accordance with established equitable principles. (citation omitted)." 38 A.2d at 814.[20]

Further, Pomeroy's classification of claims for breach of fiduciary relations as falling within equity's concurrent rather than its exclusive jurisdiction (with ultimate jurisdiction as between equity and law depending upon the remedy sought) has been criticized and rejected by such reknown professors in the field of equity jurisprudence as Joseph Story, Austin W. Scott and Sidney P. Simpson. Scott and Simpson define equity's concurrent jurisdiction as covering "cases where a right exists at law but the legal remedy is inadequate." Scott and Simpson, *Cases and Judicial Remedies* 616 (2nd Ed. 1946). Professor Story defines equity's exclusive jurisdiction as being "di-

**20.** The Court in *Bovay* also stated that by reason of the complaint's allegation that the director defendants had "enriched themselves to the injury of the corporation, a court of conscience will not regard such acts as mere torts, but as serious breaches of trust, and . . . [corporate management] will, in such case, be treated as though they were in fact trustees of an express and subsisting trust. . . ." 38 A.2d at 820. Thus, *Bovay* certainly does not support defendants' position that our Court of Chancery lacked jurisdiction to hear and determine this claim, notwithstanding the Chief Justice's characterization of the claim as falling within equity's concurrent rather than its exclusive jurisdiction. Here, as in *Bovay*, the complaint seeks an accounting and money damages.

visible into two branches, the one dependent upon the subject-matter, the other upon the nature of the remedy to be administered." 2 Story, *Commentaries on Equity Jurisprudence* § 1300 at 647 (14th Ed. 1918). Story includes within equity's exclusive subject matter jurisdiction the law of trusts—both express and implied—i.e., created by operation of law. In such cases, "equity is not enforcing more effectively rights which the law recognizes, but is creating new equitable rights quite independently of the law." Scott and Simpson, *supra*, at 617. Professors Scott and Simpson express their disagreement with Pomeroy's classification of equity's jurisdiction in the following words:

> "Pomeroy, Equity Jurisprudence (4th Ed. 1918) §§ 136–143, adopts a different classification. He uses the terms 'concurrent' and 'exclusive' to refer to the remedy; thus, he would say that a money decree against a trustee was an example of the concurrent jurisdiction, while an injunction against a legal tort was an example of exclusive jurisdiction, because only equity courts grant injunctions. This classification is adopted in Clark, Equity (1919) § 34, but is of little value at best and misleading at worst." Scott and Simpson, *supra*, at 616, n.2. (emphasis added).

The contention that all claims based on *fraud* necessarily fall within equity's concurrent rather than its exclusive jurisdiction, as defendants contend, has also been rejected by legal scholars. Professor Story points out that cases of fraud were actually heard in equity even before it acquired jurisdiction over uses and trusts, and that certain cases of fraud fall within equity's exclusive rather than its concurrent jurisdiction.

> "And here it may be laid down as a general rule subject to few exceptions, that Courts of Equity exercise a general jurisdiction in cases of fraud, sometimes concurrent with and sometimes exclusive of other courts. It has been already stated that in a great variety of cases fraud is remediable, and effectually remediable at law ... *But there are many cases in which fraud is utterly irremediable at law; and Courts of Equity in relieving against it often go not only beyond but even contrary to the rules of law.* And with the exception of wills, as above stated, Courts of Equity may be said to possess a general and perhaps a universal concurrent jurisdiction with Courts of Law in cases of fraud cognizable in the latter; and exclusive jurisdiction in cases of fraud beyond the reach of the Courts of Law...
>
> The jurisdiction in matters of fraud is probably coeval with the existence of the Court of Chancery; and it is equally probable that in the early history of that court it was principally exercised in matters of fraud, not remediable at law...."
>
> 1 Story *Commentaries on Equity Jurisprudence* §§ 260, 261 at 256–261 (14th Ed. 1918). (emphasis added).

 Our review of the *Sterling-Singer* development of Delaware equity law leads us to conclude that "fairness" suits for alleged fraud and breach of fiduciary duty fall within our Court of Chancery's exclusive and not its concurrent jurisdiction.[21] In the classic *Sterling-Singer* minority shareholders suit where a claim for breach of fiduciary duty through exercised control over the merger is pleaded against the majority shareholder, the issues are fairness *and* proper purpose. And when defendants stand on both sides of the transaction through control of the corporate machinery, under *Sterling*, the burden of proof of fairness shifts to defendants, who must also establish there to be a business purpose for the merger other than a freeze-out of the minority.

---

**21.** *Meeker v. Bryant*, Del.Ch., C.A. 6245–80 (V.C. Hartnett 1981). There dismissal of a *Singer* "fairness" suit on grounds of an adequate remedy at law was denied. Denial was based on the minority shareholder plaintiff's claim for rescission and an accounting. Though rescission appeared to be impossible for lack of an indispensable party, the Court found the prayer for an accounting based on breach of a fiduciary duty to be an independent basis for equitable jurisdiction "even where there may be an adequate remedy at law."

Thus, a "fairness" hearing requires determination not only of the existence of a proper business purpose for the merger but also the fairness to the minority shareholders of "all aspects of the transaction." *Tanzer, supra,* at 1125.

We find the *claim* before us to be comparable to the claim in *Singer* and not materially distinguishable from the claim in *Roland.* (Defendants acknowledge that *Roland* and *Singer* involved "purely equitable claims not cognizable at law.") *Singer* differs from the instant case only in that injunctive relief is not here sought, though equitable remedies of rescission and accounting are prayed for. However, in *Roland,* as here, only monetary damages were sought.

■ Contrary to defendants' assertion, we find the *wrong* in *Roland* not to be materially different from the wrong pleaded in the instant case. Here, it is alleged that the minority's vote to approve the merger was "coerced" through a materially false and misleading proxy statement. There, in *Roland,* the minority shareholders were legally denied a vote by 8 *Del.C.* § 253. We do not think it would be consistent for equity to hear a minority shareholder's fairness claim where there is statutory authority for the corporate procedure followed yet refuse to hear a fairness claim where those in control provided a vote that was allegedly tainted. Accepting the well-pleaded allegations of the complaint, as we must, the net result is the same. A majority shareholder in alleged breach of its fiduciary duty has exercised control over corporate machinery to impose its will upon the minority to accomplish a force-out merger. As stated, we conclude that such a claim falls within equity's inherent or exclusive jurisdiction.[22]

\* \* \*

■ However, even if the instant claim fell within equity's concurrent jurisdiction, we conclude that plaintiff lacks an adequate remedy at law. The elements of a

*Singer* claim for breach of fiduciary duty of majority to minority shareholders and the relief afforded for an established breach are significantly different from their counterparts in an action at law for fraud or deceit. The issues concern not only the fairness of the cashout price but the purposes underlying the merger and are to be reviewed against a fiduciary standard requiring "complete candor" of defendants. *Lynch v. Vickers Energy Corp.,* Del.Ch., 351 A.2d 570, 573 (1976), *rev'd on other grounds,* Del. Supr., 383 A.2d 278 (1977).

> "In such cases the Court will scrutinize the circumstances for compliance with the *Sterling* rule of 'entire fairness' and, if it finds a violation thereof, will grant such relief as equity may require." *Singer, supra,* at 980.

■ In contrast, in an action at law for deceit or fraudulent misrepresentation an intent to defraud must be established. The elements of "actionable fraud" consist of a false representation of a material fact knowingly made with intent to be believed to one who, ignorant of its falsity, relies thereon and is thereby deceived. *Twin Coach Company v. Chance Vought Aircraft, Inc.,* Del.Super., 163 A.2d 278 (1960); Restatement (Second) of Torts, § 525. The damages available for deceit or fraudulent misrepresentation are generally limited to those which are the direct and proximate result of the false representation and which represent the "loss-of-the-bargain" or actual "out-of-pocket" loss. *Poole v. N. V. Deli Maatschappij,* Del.Supr., 224 A.2d 260 (1966).

On the other hand, "[e]quity adopts its decrees to fit the nature and gravity of the breach and the consequences to the beneficiaries and trustee." Bogert, *Trust and Trustees* § 543(V) at 387 (2nd Ed. 1978). "The choice of relief to be accorded a prevailing plaintiff in equity is largely a matter of discretion with the Chancellor, 1 Pomeroy's *Equity Jurisprudence* (5 Ed.) § 109, . . ." *Lynch v. Vickers Energy Corp.,* Del.Supr., 429 A.2d 497, 500 (1981).

---

**22.** Since the claim falls within equity's inherent jurisdiction, plaintiff's failure to plead the lack of an adequate remedy at law is of no consequence.

"[A] claim founded on a breach of fiduciary duty permits a different form of relief, that is, an accounting or rescission or other remedy afforded for breach of trust by a fiduciary." *Lynch, supra,* 429 A.2d at 501.[23] In *Lynch,* damages representing the monetary equivalent to rescission were found to be proper and were awarded where rescission was impractical.

▆▆▆▆▆▆ Thus, the relief available in equity for tortious conduct by one standing in a fiduciary relation with another is necessarily broad and flexible. *See* Restatement (Second) of Torts, § 874 (1979). Where the alleged wrongdoer stands in a fiduciary relationship and an accounting is sought for a determination of the appropriate damages, if liability is established, equity will generally entertain jurisdiction on the premise that legal remedies are inadequate. *See Cheese Shop International, Inc. v. Steele,* Del.Ch., 303 A.2d 689, *rev'd on other grounds,* Del.Supr., 311 A.2d 870 (1973); *Meeker v. Bryant, supra*; and 4 *Pomeroy's Equity Jurisprudence* § 1421 (5th Ed. 1941).[24]

Finally, were plaintiff limited to an action at law, plaintiff's efforts to seek relief for all members of his class similarly situated would be lost. For Superior Court lacks a class action mechanism. Thus, if plaintiff were limited to an action at law and were to prevail on the merits, its judgment would be of no benefit to other minority shareholders similarly situated. Further, since a judgment at law would be limited to plaintiff's loss, any award would have little deterrent effect on a wrongdoer.

For the above reasons, we hold that the complaint before us stating a claim for breach of fiduciary duty falls within equity's jurisdiction, notwithstanding that damages may prove to be the ultimate appropriate relief. For the complaint seeks recovery for a form of fraud which is "beyond the reach of the courts of law."[25] *Story, supra.* To accept defendants' contention to the contrary, that this minority shareholder's *Singer* "fairness" claim should be limited to an action at law for deceit or fraudulent misrepresentation, would be to take a giant step backwards in equity jurisprudence.[26]

---

**23.** In *Lynch,* Justice Duffy, speaking for the majority, referred to the "well settled law that entitles beneficiaries to claim all advantages actually gained by a fiduciary as a result of a breach of trust (citations omitted). That standard has been applied to corporate affairs and directors in this State. (citations omitted). *See,* 429 A.2d at 503, n.5.

**24.** Were the instant case simply a claim for fraud or deceit arising out of an arm's-length commercial transaction in which an accounting was sought in equity for recovery of out-of-pocket damages, defendants' position would be well taken. *See Cochran v. F. H. Smith Co.,* Del.Ch., 174 A. 119 (1934). There, a suit in equity for an accounting was dismissed where no equitable relief was sought and fraud was the basis for the claim for relief.

"It is not every fraud case that is entitled to be redressed in equity. If all that is sought in equity as a relief against fraud is nothing more than what legal tribunals can afford, then equity will not stir itself." 174 A. at 121.

**25.** *See also Mansfield Hardwood Lumber Company v. Johnson,* 5th Cir., 263 F.2d 748 (1959) for application of distinction between the requisites for proof of a claim of deceit or fraud and a claim for breach of fiduciary duty. There, a

trial court decree in favor of minority shareholders ordering an accounting and rescission of their sale of stock to the corporation was affirmed on appeal. The Court so ruled, notwithstanding a prior sale by management of the corporation's assets and its liquidation and the trial court's clearly erroneous finding that the defendant officers, directors and controlling shareholders were guilty of fraud per se. Affirmance was based on application of "broad equitable concepts" flowing from the fiduciary relationship existing between plaintiffs and defendants and the latter's breach of their fiduciary duty to the minority shareholders—for which "actual intent to deceive is not required where one party is so placed in such an advantageous position to the other." 263 F.2d at 754. (Cited with approval in *Lynch, supra,* 429 A.2d at 502, 503.)

**26.** "Equity has shown itself equal to the task of uncovering and dealing with new and ingenious forms of fraud, and has maintained its classical doctrine that relief will be given against even innocent misrepresentation . . . ." Simpson, *Fifty Years of American Equity,* 50 Harv.L.Rev. 171, 177 (1937).

\* \* \*

"The internal management of corporations is becoming increasingly a concern of equity during the past fifty years. The ultimate remedy

## VI

Turning to the issue of laches, we conclude that the Court below also erred in ruling on defendants' motion to dismiss the action for lack of subject matter jurisdiction that plaintiff was barred by laches from *seeking* rescissional relief in *any* form.

Defendants' motion was predicated not on the averments of the complaint but on additional facts and conclusions contained in affidavits filed by defendants in support of their motion to dismiss; to wit: that over the two-year interval between Masoneilan's May 1977 merger with S–W and the filing of plaintiff's Delaware lawsuit in July 1979, S–W stock had been actively traded, making it difficult, if not impossible, to identify Masoneilan shareholders who, in the intervening time, sold their S–W shares and more difficult to determine the price at which the sales occurred and trading dates. *Secondly,* because over half of Masoneilan's outstanding shares were held by institutions and corporations, it would be difficult, if not impossible, to determine beneficial ownership of many of the shares. *Thirdly,* reference is then made (for the first time) to the October 1979 merger of S–W with McGraw-Edison, under which all outstanding publicly-owned shares of S–W were converted into cash and S–W became a wholly-owned subsidiary of McGraw-Edison. Defendants argue that rescission of one merger would be difficult but rescission of two mergers would be "impossible".

As a preface to its ruling on the Court's subject matter jurisdiction, the Chancellor, in effect, struck plaintiff's prayer for rescisional relief on the ground that plaintiff was guilty of laches in not filing a more timely suit. The Chancellor stated:

"Assuming but not deciding that a plaintiff in a situation such as the one here presented would, if successful at trial, normally be entitled to some form ,of rescission, I am satisfied that such form of relief is barred to plaintiff by laches, he having sat idly by while other investors drastically changed their positions. Accordingly, whether or not it would be technically possible to undo the results of the two mergers here in issue which occurred over a two year period, which is extremely doubtful, *Mills v. The Electric Autolite Company*, et al CCH Fed.Sec. § 93,354 (N.D.Ill. (1972), I conclude that the only feasible relief to which plaintiff would be entitled is therefore the assessment of such money damages as he may have been caused to have improperly suffered as a result of the actions complained of."

The Court made no mention of facts contained in plaintiff's counter-affidavit which apprised the Court of the New York State Court litigation over Masoneilan's merger with S–W which preceded the Delaware litigation by nearly three years. The thrust of plaintiff's counter-affidavit was that the Delaware class suit only became necessary by the May 29, 1979 ruling of the New York Supreme Court, Appellate Division, reversing a 1978 certification of the New York shareholder suit as a class action on behalf of all the minority, public shareholders of Masoneilan holding stock on the date of the disputed proxy statement and the 1977 merger. (See footnote, page 4 above for particulars as to the New York suit.) Since the Delaware suit was filed within one month of the decertification of the New York class action suit, plaintiff contends that there is no merit to defendants' laches argument.[27]

of a minority stockholder in the event of *ultra vires* acts, corporate mismanagement, or an unjustified starvation policy as to dividends is by bill in equity ... The divorce between corporate ownership and corporate control, now almost complete in many large business units, requires that courts of equity be alert to protect the interests of scattered ownership against personal profit-seeking on the part of those exercising centralized control and that

minority owners be encouraged to be active in asserting their rights, as the only alternative to some administrative control by government of the internal affairs of large corporations." *Id.* at 190–191.

**27.** Asserting that plaintiff was a member of the class covered by the New York suit, plaintiff relies on authorities holding that the filing of a class action tolls the running of a statute of limitations on the class members' claims. *See*

At this stage of the litigation, we do not find it either necessary or appropriate to pass on the merits of the laches issue. We conclude that the issue of laches was prematurely raised by defendants by motion to dismiss and improperly determined on its merits by the Court below. *Brown v. Dolese*, Del.Ch., 154 A.2d 233 (1959), *aff'd Dolese Bros. Co. v. Brown*, Del.Supr., 157 A.2d 784 (1960). The Chancellor's holding in *Dolese* is precisely in point. There, in a strikingly similar case, the Chancellor declined to rule on a laches contention raised by the defense, before answer, as a basis for dismissal of an action for alleged breach of fiduciary duty of a controlling shareholder to minority shareholders. The Chancellor stated:

> "Defendants having been charged with fraudulent concealment of the essential facts upon which plaintiffs propose to rely in order to establish their cause of action in a situation in which the principal actor, Roger, owed a heavy fiduciary duty to both of his sisters, statute of limitations or laches should not at this juncture be applied to bar recovery as Roger may in fact have been guilty of fraudulent breaches of trust resulting in his self-enrichment at the expense of the corporation, (citations omitted) in the light of the allegations of the complaint, statute of limitations . . . as well as laches should be affirmatively pleaded, Rule 8(c), and established at trial." 154 A.2d at 240.

A complaint may not be dismissed for alleged failure to state a claim unless it appears to a reasonable certainty that under no state of facts which could be proved would plaintiff be entitled to relief. *Fish Eng'r Corp. v. Hutchinson*, Del.Supr., 162 A.2d 722 (1960). The same principle should *a fortiorari* apply to a motion to strike the remedy portion of a complaint on the ground that it is barred by laches. In reality, that was the predicate of defendants' motion in this case. By asserting laches as a bar to plaintiff's claim for rescission, and prevailing thereon, the way was *then* cleared for defendants to launch their primary attack on the Court's subject matter jurisdiction. Yet laches is an affirmative defense which the Rules of the Court of Chancery provide a party shall raise by "pleading to a preceding pleading", i.e., by answer, as "constituting an avoidance or affirmative defense." [28] The benefit to defendants from asserting, before answer, a defense of "impossibility" based on laches as a bar to a claim for rescissional relief was considerable. By securing a premature ruling on plaintiff's right to equitable relief, defendants immeasurably improved the plausibility of their jurisdictional argument as to the adequacy of plaintiff's remedy at law.

The ruling below also runs counter to hornbook legal principles governing modern "notice" pleading as well as well-defined standards for ruling on a motion to dismiss or for summary judgment. Here, the Court has gone outside the complaint to obtain facts (as to security trading and a second merger) on which to base its ruling on laches; and the Court has thereby treated defendants' motion as if it were ripe for final determination. (See Court of Chancery Rule 12(b)(1) and (6); Rule 12(d).) Yet the Court has passed over the facts relating to the New York litigation submitted by plaintiff to explain the timing of the Delaware suit. We think those facts raised, at the very least, a justiciable issue as to the timeliness of plaintiff's suit that precluded striking, in effect, before trial, plaintiff's claim for rescissional relief on the ground of laches. *See Brown v. Ocean Drilling & Exploration Company*, Del.Supr., 403 A.2d 1114 (1979) (holding the Court of Chancery to have erred—in granting partial summary judgment for plaintiff where issues of material fact are framed and in also prematurely dismissing plaintiff's claim for relief based on unjust enrichment).

---

*American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Haas v. Pittsburgh National Bank*, 3rd Cir., 526 F.2d 1083 (1975).

**28.** *See* Court of Chancery Rule 8(c), subtitled "Affirmative Defenses".

An essential element for application of the doctrine of laches is a finding of unreasonable delay. *Shanik v. White Sewing Machine Corporation*, Del.Supr., 19 A.2d 831 (1941). Such a factual question is usually only properly disposed of by summary judgment after discovery or at trial.

Any doubt as to the existence of a genuine issue of fact must be resolved against the moving parties, here defendants. *Nash v. Connell*, Del.Ch., 99 A.2d 242 (1953). For the Court to rule on the remedies ultimately available to plaintiff before the rights and liabilities of the parties have been tried and determined (or at least sorted out to determine if summary judgment lies) is to put the cart before the horse. That is particularly true here where rescissional relief, if found to be appropriate, may take various forms, including rescissional damages in lieu of actual rescission, if impractical. *Lynch, supra*, 429 A.2d at 497.

REVERSED.

QUILLEN, Justice, concurring:

I concur in the judgment of the majority. The result is in accord with the present state of Delaware law. *Roland International Corporation v. Najjar*, Del.Supr., 407 A.2d 1032 (1979). Given the overlay of *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969 (1977) and its progeny on the corporate statutory merger scheme, the result is also consistent with the policy as to the jurisdiction of the Court of Chancery as expressed by the General Assembly. Compare 8 *Del. Laws* § 262 and *Roland, supra*, 407 A.2d at 1037–1040 (Quillen, Justice, dissenting); compare also 8 *Del.C.* § 220 as amended by 56 *Del.Laws* Ch. 50 eff. July 3, 1967. Finally, the monetary cause of action here against the corporate defendants is sufficiently akin to an accounting for the breach of a fiduciary duty to historically justify the exercise of substantive equitable jurisdiction as an analogy from trust law. 4 *Pomeroy's Equity Jurisprudence* (5th ed.) § 1088, § 1421. See also *Singer, supra*, 380 A.2d at 982 (McNeilly, Justice, concurring).

As to laches and the claim for rescission, given the history of the New York cause of action noted in the majority opinion, I agree it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law to the circumstances. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467 (1962).