**HUGHES TOOL COMPANY, Plaintiff Below, Appellant,**

v.

**FAWCETT PUBLICATIONS, INC. and Noah Dietrich, Defendants Below, Appellees.**

**ROSEMONT ENTERPRISES, INC., Plaintiff Below, Appellant,**

v.

**FAWCETT PUBLICATIONS, INC. and Noah Dietrich, Defendants Below, Appellees.**

Supreme Court of Delaware.

Jan. 9, 1974.

See also, Del.Ch., 290 A.2d 693.

S. Samuel Arsht, David A. Drexler, and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington and Davis & Cox, New York City, of counsel, for plaintiffs below, appellants.

Charles F. Richards, Jr. and R. Franklin Balotti, of Richards, Layton & Finger, Wilmington and Steptoe & Johnson, Washington, D. C., of counsel, for Noah Dietrich, defendant below, appellee.

E. Dickinson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, for Fawcett Publications, Inc., defendant below, appellee.

CAREY, Justice, and McNEILLY and WALSH, Judges, sitting.

CAREY, Justice:

These are appeals by Hughes Tool Company and Rosemont Enterprises, Inc., plaintiffs below, from a judgment of the Court of Chancery in favor of defendants below, Fawcett Publications, Inc. and Noah Dietrich. Appellants contend that the Court below erred in dismissing the action on the ground that appellants have an adequate remedy at law. The sole question for our consideration at this time is whether these cases were properly instituted in the Court of Chancery.

The litigation arises out of contracts between appellee Noah Dietrich and Howard Hughes, and between Dietrich and Hughes Tool Company. These contracts were entered into on August 1, 1959, as settlement agreements of actions which Dietrich had brought against Howard Hughes and Hughes Tool Company. Dietrich had worked for Hughes Tool Company for more than three decades until he left its employ in 1957, and during that time he had served as a Director and Executive Vice-President of the company.

The contract between Hughes and Dietrich provided that Dietrich was not to disclose:

"1. Any information (whether true or false, whether laudatory or defamatory, whether of fact or of opinion, and whether previously disclosed to or otherwise known by others or not) which either was acquired by Dietrich in or as a result of his employment by or confidential relationship to Hughes Tool Company, Howard Hughes, Trans World Airlines, Inc., Hughes Aircraft Company, or any of their affiliate companies, or which by its nature or manner of disclosure is information reasonably calculated to create the inference that, in whole or in part, it was so acquired; or

.    .    .    .    .    .

"4. Any biographical or historical book, article, or other type of writing with respect to the life and affairs of Howard Hughes, or the history and affairs of Hughes Tool Company, whether or not such book, article, or other writing may be covered by the provisions of the foregoing subparagraphs, and Dietrich agrees to surrender to Howard Hughes or his attorneys or agents any manuscripts or other documentation of any or all of the above in his possession or under his control."

Dietrich's contract with Hughes Tool Company also provided that Dietrich should make himself available as a consultant to the company for seven years, in return for which he was to be paid $694,000 in periodic payments.

Despite these contracts, Dietrich has allegedly written or caused to be written an account of his experiences with Howard Hughes and Hughes Tool Company, titled HOWARD, THE AMAZING MR. HUGHES. This book has been published by Fawcett Publications, Inc. Appellants brought these actions on February 18, 1972, alleging that the manuscript was about to be published and that the actions of the appellees constituted a knowing and

willful breach of the settlement agreements and a violation of exclusive rights secured to Rosemont Enterprises, Inc.* by contract with Hughes Tool Company.

■ Appellees moved to dismiss the complaints on several grounds. Their motions to dismiss were granted because, said the Court of Chancery, it lacked subject matter jurisdiction. That Court correctly stated at 297 A.2d 428, 431 that it "has no jurisdiction of a cause of action as to which the party seeking relief has an adequate remedy at law. 10 Del.C. § 342, and see In re Markel, Del.Supr., 254 A.2d 236." However, the mere fact that a litigant may have a remedy at law does not divest Chancery of its jurisdiction. Glanding v. Industrial Trust Co., 28 Del. 499, 45 A.2d 553 (1945); 1 Storey, Equity Jurisprudence, p. 25 (1886). "The basic jurisdictional fact upon which equity operates is the absence of an *adequate* remedy in the law courts." Tull v. Turek, 38 Del.Ch. 182, 147 A.2d 658 (1958) at 664 (emphasis added). The question is whether the remedy available at law will afford the plaintiffs full, fair and complete relief. Elster v. American Airlines, 34 Del.Ch. 94, 100 A.2d 219 (1953); Hitchens v. Millman, 18 Del.Ch. 404, 162 A. 39 (1932).

A careful review of appellants' complaints convinces us that their actions are properly pursued in the Court of Chancery, that being the only Court which can afford them complete relief.

■ The Vice-Chancellor held that the prayers of a complaint are not controlling in determining jurisdiction and that, when required, the Court may "go behind a facade of prayers in order to determine whether the relief sought is in fact equitable or legal." 297 A.2d 428 at 431–432. We do not repudiate this principle, but we note that although the prayers are not controlling, they are nevertheless a part of the complaint and may be considered in deter-

mining what a plaintiff really seeks. It is our conclusion that the appellants seek more than merely damages for breach of contract, and for Fawcett's alleged inducement of that breach.

■ It is true that ordinarily a party with these claims has an adequate remedy at law. This is, however, no ordinary case; it concerns the allegedly wrongful publication of a book and the prospective damages and consequences arising therefrom. It is not only past profits and damages which appellants seek; their actions also seek to prevent further alleged unjust enrichment through a mandatory injunction ordering appellees to surrender the manuscript and to assign the copyright to the literary work to appellants. The lower Court held that the manuscript might be recovered in an action at law, citing 18 Am.Jur.2d, Copyright and Literary Property, § 135 (1965), and II Woolley, Delaware Practice §§ 1516, 1524 and 1562 (1906). The appellants, however, claim not only the manuscript, but the copyright thereto. Apparently the manuscript was published shortly after these suits were instituted. The cases cited by Am.Jur. [Dart v. Woodhouse, 40 Mich. 399 (1879) and Macmillan and Co. v. Dent, 1 Ch. (Eng.) 101 (1906), affd. 1 Ch. 107 (CA) (1907)] are not persuasive authority for the argument that replevin or detinue can reach a copyright. The cited portions of Woolley indicate that perhaps the manuscript might be recovered at law, but it is not clear that the incorporeal copyright could be acquired by an action at law. Federal statutory law provides some insight into the nature of a copyright. 17 U.S.C. § 27 indicates that a statutory copyright "is distinct from the property in the material object copyrighted." 17 U.S.C. § 28 states that a statutory copyright may be assigned "by an instrument in writing signed by the proprietor of the copyright." While a mandatory injunction might compel such a transfer, an

---

* Rosemont is a corporation claiming to have acquired, in 1965, the exclusive world-wide right to publish, print, or otherwise release Hughes' personal history or biography.

action in replevin or detinue would, if successful, recover merely the physical manuscript.

 Appellees contend that jurisdiction must be determined as of the time of the filing of the action, and that at that time the return of the manuscript would have been an adequate remedy. We disagree. A common-law copyright, like its statutory successor, is distinct from that which is copyrighted. It is not a material substance, but is an incorporeal right in the nature of a franchise or privilege of publication. 18 Am.Jur.2d, Copyright and Literary Property, § 7 (1965); 1 Nimmer on Copyright § 11.1 (1973). We think that such a unique interest, devoid as it is of physical substance, cannot be recovered in an action at law; we have found no authority holding that it can.

The appellants' actions are not merely actions for damages. We view the prayers for assignment of a copyright not as a "facade," but as a genuine effort to secure that unique property, a copyright.

The order of dismissal is reversed and the cases are remanded to the Court of Chancery for proceedings consistent with this decision.