# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., and MILLENNIUM PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) | C.A. No. 2018-0384-MTZ |
| v. | ) ) ) | |
| GENENTECH, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  December 7, 2018
Date Decided:  March 26, 2019

Philip A. Rovner & Jonathan A. Choa, POTTER ANDERSON CORROON LLP, Wilmington, Delaware; William F. Cavanaugh, Irena Royzman, Jacob F. Siegel, Eric B. LaPre, & Sara A. Arrow, PATTERSON BELKNAP WEBB & TYLER LLP, New York, New York, *Attorneys for Plaintiffs Takeda Pharmaceuticals U.S.A., Inc., Takeda Pharmaceuticals America, Inc., and Millennium Pharmaceuticals, Inc.*

Kelly E. Farnan & Blake Rohrbacher, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Robert W. Trenchard, Jane M. Love, & Mark H. Mixon, Jr., GIBSON, DUNN & CRUTCHER LLP, New York, New York, *Attorneys for Defendant Genentech, Inc.*

**ZURN, Vice Chancellor.**

Two biotechnology companies are engaged in patent litigation in multiple European jurisdictions. In those cases, the alleged infringer has asserted a defense that it holds a license based on an agreement with a third company. In hopes of ending the foreign patent litigation, the alleged infringer then came to Delaware and sued that third company, which is a subsidiary of the patentholder. The alleged infringer seeks a declaratory judgment that it has a license and an anti-suit injunction against the third company and anyone acting in active concert or participation with it. Because the alleged infringer has an adequate remedy at law in the form of its license defense in the foreign patent litigation, this Court does not have subject matter jurisdiction over the alleged infringer's request for declaratory relief. The case is therefore dismissed.

## I.  BACKGROUND

### A.  The Parties' Corporate and Contractual Relationships

In 1997, defendant Genentech, Inc. ("Genentech") and LeukoSite, Inc. ("LeukoSite") entered into a Development Collaboration and License Agreement, dated December 18, 1997 (the "License Agreement").[1] LeukoSite was "the owner or exclusive licensee of certain technology and other proprietary know-how" for

---

[1] Aff. of Robert W. Trenchard in Supp. of Def. Genentech, Inc.'s Mot. to Dismiss (Docket Item ("D.I.") 10), Ex. A. Delaware law governs the License Agreement. *Id.* § 13.3.

certain identified products, which Genentech desired to use.[2]  LeukoSite and Genentech agreed to collaborate to develop LDP-02, a monoclonal antibody.[3]

Plaintiff Millennium Pharmaceuticals, Inc. ("Millennium") is the surviving entity of a 1999 merger with LeukoSite.[4]  In 2004, Genentech and Millennium agreed to terminate the License Agreement through a Termination Agreement dated May 12, 2004 (the "Termination Agreement").[5]  In the Termination Agreement, the parties cross-licensed intellectual property from their work related to LDP-02, and Genentech returned the rights to make, use, and sell LDP-02 to Millennium.[6]  Genentech granted Millennium, among other things, "a non-exclusive, paid-up, royalty free, world-wide license" for "GNE Patents."[7]  GNE Patents are defined as

> any United States patent or patent application, including any division, continuation, or continuation-in-part thereof and any foreign patent or patent application or equivalent corresponding thereto and any letters patent or the equivalent thereof issuing thereon or reissue, re-examination, supplemental protection certificate or extension thereof, (i) which is owned or controlled by GNE or to which GNE has a transferable or sublicensable interest and (ii) which is necessary for the research, development or commercialization of LDP-02,

[2] Trenchard Aff. Ex. A at 1.

[3] *Id*. at 1, § 1.26.

[4] Compl. ¶ 7.  All citations to the Complaint are to Plaintiffs' Verified Complaint.  D.I. 1.

[5] Compl. ¶ 23.  Delaware law governs the Termination Agreement.  Trenchard Aff. Ex. B § 13(d).

[6] Compl. ¶ 23; Trenchard Aff. Ex. B at §§ 3, 4.

[7] Trenchard Aff. Ex. B § 4.

Derivatives or Antibody Products, including without limitation GNE's interest in Joint Patents. Notwithstanding the foregoing, "GNE Patents" shall not include (a) the Excluded GNE Patents, or (b) any claim of a GNE Patent directed to a use of LDP-02, a Derivative or an Antibody Product in the Field for a disease indication other than an inflammatory bowel disease, which use is conceived and reduced to practice after the Effective Date.[8]

The Termination Agreement defined "Excluded GNE Patents" as several identified patents not relevant here, as well as "any other patents or intellectual property owned by a Third Party for which direct licenses are generally available from such Third Party."[9] A "Third Party" is defined as "a person or entity who or which is not a party" to the License Agreement.[10]

In 2008, plaintiff Takeda Pharmaceuticals U.S.A., Inc. acquired Millennium. Millennium and plaintiff Takeda Pharmaceuticals America, Inc. are wholly owned subsidiaries of Takeda Pharmaceuticals U.S.A.[11]

Between 1990 and 2009, Roche was a majority stockholder of Genentech.[12] In 2009, Roche acquired the rest of Genentech's stock, and Genentech became a

---

[8] *Id*. § 1(e).

[9] *Id*. § 1(c)(i).

[10] Trenchard Aff. Ex. A § 1.53 (definition of Third Party in License Agreement), Ex. B § 8 (identifying which definitions of License Agreement survived the termination of that Agreement).

[11] Compl. ¶¶ 2, 6-7. Takeda and Roche operate through subsidiaries in different countries, and this opinion simplifies those corporate structures by referring only to Takeda and Roche unless it is necessary to identify the specific entity, such as Millennium.

wholly owned subsidiary of Roche.[13]  Takeda alleges that after Genentech became a wholly owned subsidiary of Roche, Roche "consolidated all of its U.S pharmaceutical operations" in Genentech.[14]  Genentech's campus is now allegedly Roche's headquarters for its United States pharmaceutical operations, and the two companies share office space at Roche's principal place of business in New Jersey.[15]

The parties worked to develop the LDP-02 antibody, which eventually became an active ingredient in ENTYVIO.[16]  ENTYVIO treats adult ulcerative colitis and adult Crohn's disease, and was first approved by the FDA in 2014.[17] Takeda's fiscal year 2017 sales of ENTYVIO were nearly $1.8 billion.[18]

### B.  Roche Files For Patent Rights Related To Antibody Technology.

In 2006, Roche filed patent applications in the United States and Europe, including United States Patent Application 14/195,066 (the "'066 Application").[19]

---

[12] *Id.* ¶ 36.  The ultimate corporate parent of Roche is Roche Holding AG, a publicly traded company organized and existing under the laws of Switzerland.  *Id.* ¶ 8.

[13] *Id.* ¶ 36.

[14] *Id.* ¶ 38.

[15] *Id.* ¶¶ 38-41.

[16] *Id.* ¶¶ 17-18, 20-21.

[17] *Id.* ¶ 13.

[18] *Id.* ¶ 19.  This figure was based on exchange rates when Takeda filed the Complaint.

[19] Trenchard Aff. Exs. C & D.  This Court may take judicial notice of these patent applications and accompanying documents.  *See Wilkin v. Narachi*, 2018 WL 1100372, at *2 n.3 (Del. Ch. Feb. 28, 2018) (taking judicial notice of a World Intellectual Property

For each application, the applicant and assignee were Roche entities, not Genentech.[20] European Patent No. 2,007,809 (the "'809 Patent") is a foreign counterpart of the '066 Application.[21] The European Patent Office granted the '809 Patent in September 2012.[22]

The '066 Application included a power of attorney ("the Power of Attorney") through which Roche authorized several agents to prosecute that application.[23] A Genentech Vice President of Intellectual Property signed the Power of Attorney on Roche's behalf.[24] Roche gave prosecution authority to six Genentech in-house attorneys and one Genentech patent agent, among others.[25] Takeda asserts that these Genentech employees "have responsibility for and control the prosecution of the '066 Application on behalf of Genentech," while no Roche "patent attorneys or agents are identified."[26]

---

Organization Patent Application); *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *4 (Del. Ch. Dec. 30, 2010) (taking judicial notice of title pages of patents and publicly filed patent assignment form).

[20] Trenchard Aff. Exs. C & D.

[21] Compl. ¶ 34.

[22] Trenchard Aff. Ex. E.

[23] Compl. ¶ 43; *id*. Ex. A.

[24] Compl. ¶ 44.

[25] Compl. ¶ 45; *id*. Ex. B.

[26] Compl. ¶ 45.

The '066 Application was pending with the United States Patent and Trademark Office when Takeda filed its complaint here.[27] On August 6, 2018, the Patent and Trademark Office allowed the '066 Application.[28] Roche then paid the required fees and disclosed relevant documents, though Takeda disputes the scope and sufficiency of that disclosure.[29]

### C. Roche Sues Takeda Alleging ENTYVIO Infringes the '809 Patent, And Takeda Asserts It Has A License.

In February 2018, Roche sued Takeda in Germany on the basis that ENTYVIO infringes the '809 Patent.[30] In June 2018, Roche sued Takeda in Italy as well.[31]

As a defense against Roche's infringement claims, Takeda has asserted it has a license. Takeda contends that under the Termination Agreement, Takeda has a "non-exclusive, paid-up, royalty free, world-wide license" to use "GNE Patents." Takeda claims the '066 Application is a "GNE Patent" as defined in the Termination Agreement because Genentech "controls" the Application, and that Takeda has equal rights to the '809 Patent because it is a counterpart to the '066

---

[27] D.I. 9 at 7.

[28] D.I. 15 at 9.

[29] *Id*.

[30] Compl. ¶ 47; *see* Aff. of Irena Royzman in Supp. of Pls.' Opp'n to Genentech, Inc.'s Mot. to Dismiss (D.I. 15), Ex. A.

[31] D.I. 15 at 9.

Application. Takeda asserted a license defense against Roche in the German litigation,[32] and filed invalidity proceedings for the '809 Patent against Roche in the United Kingdom in which Takeda also asserted that it has a license.[33]

On May 30, 2018, Takeda brought the dispute across the Atlantic by suing Genentech in this case. Takeda seeks a declaratory judgment that Genentech granted Takeda a license to the '066 Application and its foreign counterparts.[34] Takeda also seeks an anti-suit injunction against Genentech, and anyone in active concert or participation with it, in hopes of precluding or resolving Roche's infringement claims under the '066 Application and its foreign counterparts.[35]

In Takeda's words, the relief it seeks in Delaware "will terminate the controversy between the parties" and prevent "Genentech and its affiliates" from continuing "to assert infringement claims against Takeda."[36] Even though Roche is not a party to the License or Termination Agreements, Takeda asserts the relief it

---

[32] Trenchard Aff. Ex. G at 58-59, 61.

[33] Compl. ¶ 48; Royzman Aff. Ex. C ¶ 7. In briefing, Takeda stated it "also filed a nullity action in Germany seeking to invalidate the German part of the '809 Patent." D.I. 15 at 8.

[34] Compl. ¶¶ 53-59.

[35] *Id.* ¶ 59; *id.* at 17-18.

[36] *Id.* ¶¶ 58-59.

seeks is appropriate and effective against Roche "[g]iven Genentech's relationship within" Roche.[37]

On July 23, 2018, Genentech moved to dismiss for lack of subject matter jurisdiction, for failure to join Roche as an indispensable party, and for failure to state a claim under the Termination Agreement. Takeda opposed the motion on August 22. Genentech replied in support of its motion on September 7. The case was reassigned to me on October 17, and I heard oral argument on December 7.

## II. ANALYSIS

Genentech claims this case must be dismissed because this Court lacks jurisdiction over Takeda's claim, Roche has not been joined as a party, and Takeda has failed to state a claim. I address subject matter jurisdiction first, as I can only substantively review the pleadings if I have jurisdiction to do so.[38]

"When considering a motion to dismiss under Court of Chancery Rule 12(b)(1), the Court's first task, when appropriate, is to assess whether the fundamental predicates to subject matter jurisdiction exist."[39] "The Court then

---

[37] *Id*. ¶ 56.

[38] *See K&K Screw Prods., L.L.C. v. Emerick Capital Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011) ("Because the issue of subject matter jurisdiction is a potentially dispositive threshold issue, I consider first whether the Complaint pleads a justiciable case or controversy."); *Gen. Elec. Co. v. Star Techs., Inc.*, 1996 WL 377028, at *1 (Del. Ch. July 1, 1996) ("Since the Court's subject matter jurisdiction is a dispositive, threshold issue concerning the Court's power to act, I do not address the venue issue or the motion to stay this proceeding.").

[39] *Hall v. Coupe*, 2016 WL 3094406, at *2 (Del. Ch. May 25, 2016).

turns its focus to the 'nature of the wrong alleged' to determine whether Chancery's limited jurisdiction has been invoked."[40] "The plaintiff 'bears the burden of establishing this Court's jurisdiction,' and when determining whether that burden has been met, the Court may consider the pleadings and matters 'extrinsic to the pleadings.'"[41]

"The Court of Chancery can exercise subject matter jurisdiction only when a case falls into one of three buckets."[42] Those buckets contain cases in which (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) "jurisdiction exists by statute."[43] Takeda alleges its claims fall into the second bucket.[44] Genentech responds that Takeda has no controversy with Genentech, and that Takeda has an adequate remedy at law.[45] I find that while Takeda has an actual controversy with Genentech that could justify a declaratory judgment, the relief Takeda seeks

---

[40] *Id*. (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).

[41] *Id*. (quoting *Pitts v. City of Wilm.*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009)).

[42] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (identifying the three ways the "Court of Chancery can acquire subject matter jurisdiction").

[43] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5.

[44] Compl. ¶ 9.

[45] D.I. 9 at 10-15. Genentech also argues Takeda cannot obtain an anti-suit injunction. *Id*. at 16-19. Because that issue raises nuanced questions about the scope of an injunction I believe I lack jurisdiction to grant, I do not examine that issue.

(which is ultimately from Roche) can be adequately obtained at law. Therefore, this Court lacks subject matter jurisdiction, and the case must be dismissed.

### A.     There Is An Actual Controversy Between Takeda And Genentech.

"Delaware courts are statutorily authorized to entertain an action for a declaratory judgment, provided that an 'actual controversy' exists between the parties."[46] To show an "actual controversy," a party must show four factors:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[47]

Takeda has satisfied these elements. First, the controversy involves Takeda's rights under the Termination Agreement. Second, Takeda seeks a declaration against Genentech, which has an interest in contesting that claim. Genentech might contest such a claim to preserve its own rights to use the patent without competition. Assuming Genentech did not have the authority to grant a license, Genentech also may have an interest in avoiding a ruling that it granted Takeda that license. Third, the controversy is real and adverse. Takeda and Genentech disagree over Takeda's legal rights under the Termination Agreement;

---

[46] *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216-17 (Del. 2014).

[47] *Id.* at 1217 (quoting *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479-80 (Del. 1989)).

Genentech's argument that Takeda has failed to state a claim to Roche's patents makes that clear.[48]

Finally, the issue is ripe for judicial determination. "Generally, a dispute will be deemed ripe if 'litigation sooner or later appears to be unavoidable and where the material facts are static.'"[49] Roche has sued Takeda for infringing patents for which Takeda believes Genentech granted Takeda a license. Genentech has argued the Termination Agreement did not give Takeda that license.[50]

But the fact that Takeda has satisfied the elements for obtaining a declaratory judgment does not mean this Court has jurisdiction. "It is well settled that the Declaratory Judgment Act does not independently confer jurisdiction on this court."[51] I must therefore analyze whether there is an equitable basis for jurisdiction.

---

[48] D.I. 9 at 24-29.

[49] *XI Specialty Ins. Co.*, 93 A.3d at 1217 (quoting *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).

[50] D.I. 9 at 24-29.

[51] *Reeder v. Wagner*, 2007 WL 3301026, at *1 (Del. Ch. Nov. 1, 2007); *see also Diebold Comput. Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591 (Del. 1970) (stating this Court "has jurisdiction in a declaratory judgment action if there is any underlying basis for equity jurisdiction measured by traditional standards"); *Buczik v. Wonchoba*, 1993 WL 93444, at *1 (Del. Ch. Mar. 24, 1993) ("This Court will only assume jurisdiction over a claim for declaratory relief if equity would independently have jurisdiction over the controversy, without reference to the declaratory judgment statute.").

**B.    Takeda Has An Adequate Remedy At Law That Prevents This Court From Exercising Jurisdiction.**

This Court does not "have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[52] "The question is whether the remedy available at law will afford the plaintiffs full, fair, and complete relief."[53]

Genentech asserts Takeda has an adequate remedy at law in asserting the license as a defense against Roche in the ongoing infringement litigation, as Takeda has already done. Generally, "the ability of a party to obtain the equivalent of injunctive relief by raising its contentions as a defense in an action at law[] constitutes an adequate remedy that precludes injunctive relief in equity."[54] Said

---

[52] 10 *Del. C.* § 342.

[53] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 (quoting *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 315 A.2d 577, 579 (Del. 1974)).

[54] *Manor Healthcare Corp. v. Tolbert*, 1986 WL 5476, at *3 (Del. Ch. May 13, 1986); *see also Buczik*, 1993 WL 93444, at *2 (ruling plaintiff "clearly has an adequate remedy at law because she may raise the release as an affirmative defense" in another action); *E.I. duPont de Nemours & Co. v. HEM Research, Inc.*, 1989 WL 122053, at *4 (Del. Ch. Oct. 13, 1989) (granting motion to dismiss equitable rescission claim because "plaintiff would have an adequate legal defense to an action by defendant under the instrument"). *El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, 669 A.2d 36 (Del. 1995), is in accord. There, the Supreme Court noted that, generally, the interference of equity requires the absence of an adequate remedy at law. 669 A.2d at 39. That ruling specifically considered the assertion of a facially invalid forum selection clause as a potential defense in a Texas action. *El Paso*'s specific ruling on forum selection clauses was overruled by *National Industries Group (Holding) v. Carlyle Investment Management*, 67 A.3d 373 (Del. 2013). There, the Supreme Court concluded this Court had subject matter jurisdiction to issue an injunction ordering specific performance of a forum selection cause. 67 A.3d at 385-86. In that case, asserting the clause as a defense

differently, "[w]here there is a defense cognizable at law the possessor of it has an adequate remedy at law and equity will not enjoin his adversary from suing."[55]

This Court has applied this principle to actions at law pending in Delaware's Superior Court, as well as actions pending in other states.[56] *Buczik v. Wonchoba* is an example of the former.[57] The plaintiff sought a declaratory judgment that the defendant had agreed to release its claims against the plaintiff, such that the defendant could not maintain its Superior Court action against the plaintiff.[58] This Court concluded it lacked jurisdiction. The plaintiff had "an adequate remedy at law because she may raise the release as an affirmative defense to [the] Superior Court action."[59] Similarly, I conclude Takeda has an adequate remedy at law because it can assert, and indeed has asserted, its purported license as a defense in the infringement proceedings it ultimately seeks to enjoin.

---

in Kuwait was not an adequate remedy at law because the parties had agreed to have the dispute heard in Delaware, not Kuwait. *Id*. *El Paso*'s general iteration of the principle that an adequate remedy at law precludes equitable jurisdiction remains undisturbed.

[55] *Gray Co. v. Alemite Corp.*, 174 A. 136, 144 (Del. Ch. 1934).

[56] *See El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 1994 WL 248195, at *3 (Del. Ch. May 31, 1994) (finding an adequate legal remedy in Texas), *aff'd*, 669 A.2d 36 (Del. 1995); *Manor Healthcare Corp.*, 1986 WL 5476, at *4 (finding an adequate legal remedy in Oklahoma).

[57] 1993 WL 93444 (Del. Ch. Mar. 24, 1993).

[58] *Id*. at *1.

[59] *Id*. at *2.

Takeda questions the adequacy of its remedy in the German infringement proceedings, claiming "the German infringement proceeding would not provide relief that is as complete, prompt, or efficient as would Delaware's disposition of this case."[60] Takeda believes the German proceedings will not afford it "the substantive protections" available in Delaware.[61] Takeda questions, without an evident factual basis, whether "discovery into Genentech's control over the '066 Application," a trial, live testimony, and cross-examination are available in Germany.[62] But Takeda has not explained why any procedural differences between Germany and Delaware prevent the German court from entering full, fair, and complete relief on Takeda's license defense. Takeda also doubts whether the German court can apply Delaware law "as effectively as Delaware courts could."[63] Takeda has not persuaded me the German court cannot resolve the dispute before it; Delaware courts often apply Delaware procedures alongside the law of other jurisdictions.[64]

---

[60] D.I. 15 at 12.

[61] *Id*. at 14.

[62] *Id*.

[63] *Id*.

[64] *See, e.g.*, *In re Viking Pump, Inc.*, 148 A.3d 633, 660 (Del. 2016) (applying New York law); *QVT Fund LP v. Eurohypo Capital Funding LLC I*, 2011 WL 2672092, at *8 (Del. Ch. July 8, 2011) (applying German law); *Kostolany v. Davis*, 1995 WL 662683, at *3 (Del. Ch. Nov. 7, 1995) (applying Dutch law).

Takeda also asserts that a judgment from this Court would provide more finality than a successful license defense in Germany, as a judgment here would "obviat[e] the need for any further contractual *or* patent litigation in *any forum* (including Germany, the United Kingdom, Italy, and the United States), and put[] a complete end to Roche's lawsuits asserting Genentech-controlled intellectual property."[65] It is not clear to me that Roche would be bound by the requested anti-suit injunction against "Genentech and each of its officers, agents, servants and employees, and those persons in active concert or participation with them."[66] Takeda also seems unconvinced. The most Takeda could assert is that "[d]epending on the scope of the injunction that issues and Roche's conduct, Roche certainly may be a party against whom the injunction could be enforced."[67]

Takeda argues Genentech and Roche are one and the same for purposes of this case based on Roche's Power of Attorney, which empowers Genentech employees to prosecute the '066 Application; Roche's designation of Genentech as its center of United States operations; and Roche's coexistence with Genentech in New Jersey office space. But Takeda's attempt to equate Genentech with Roche fails to show a Delaware ruling would provide more full, fair, and complete relief than a European ruling on the license defense. In my view, the better course is to

---

[65] D.I. 15 at 13.

[66] Compl. at 18.

[67] D.I. 15 at 25.

let the German court, with Takeda and Roche clearly before it, decide whether Takeda has a license defense against infringement. That would directly answer the contested question in a way that would bind Roche. The relief Takeda seeks here, against Genentech, cannot be as full and complete as a ruling between Takeda and Roche.

Finally, Takeda argues that the principles underlying a *forum non conveniens* analysis support adjudicating its license defense here, rather than in the foreign patent cases.[68] *Forum non conveniens* applies in varied contexts,[69] but this is not one of them. That doctrine is a discretionary, multi-factor analysis that assesses the hardship the plaintiff's choice of forum may work on the defendant.[70] But considerations such as the relative ease of access to proof do not inform whether the Court has jurisdiction over the plaintiff's claim. Said differently, the Court's subject matter jurisdiction does not depend on convenience.

Though Germany's system may take a different approach than Delaware's, Takeda has failed to show that the German court is incapable of providing full, fair, and complete relief on Takeda's license defense. Justice Jacobs, writing as

---

[68] D.I. 15 at 13-15. Takeda did not cite any decision applying *forum non conveniens* factors to a subject matter jurisdiction analysis.

[69] *See Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1251 (Del. 2018) (discussing differences between doctrines in applying *forum non conveniens*).

[70] *See Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 269 (Del. 2001) ("A motion to stay or dismiss on the ground of *forum non conveniens* is addressed to the sound discretion of the trial court.").

Vice Chancellor, recognized that "[i]t is an unavoidable fact that a particular choice of forum will often confer a tactical advantage of one kind or another upon a litigant. But, that fact, standing alone, does not necessarily render the chosen forum unfair or inadequate for the opposing parties."[71] Roche may have achieved that first-mover advantage by asserting its European patent rights in Germany, but Takeda nonetheless has an adequate remedy at law in that proceeding. As a result, this Court lacks subject matter jurisdiction.

Genentech also argues Roche is a necessary party under Rule 19, and that Takeda has failed to state a claim upon which relief can be granted. I decline to decide these issues: I lack jurisdiction to do so, and addressing those issues in tandem with the German court may risk inconsistent analyses or outcomes.[72]

## C.     The Dismissal Is Without Prejudice.

My conclusion depends on Takeda's ability to assert a license defense in Germany. As explained, Takeda has already done so, and has not convinced me that the German court cannot fully evaluate that argument. I do not intend to destroy Takeda's ability to assert its license defense. If Takeda is prevented from

---

[71] *Manor Healthcare Corp.*, 1986 WL 5476, at *4.

[72] *See Baier v. Upper New York Inv. Co. LLC*, 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018) (stating "jurisdictional challenges, both subject matter and personal, present threshold inquiries" and declining to reach arguments concerning failure to state a claim).

asserting it in Germany or other jurisdictions, Takeda is not precluded from again seeking relief here. The dismissal is without prejudice.[73]

## III. CONCLUSION

For these reasons, Genentech's motion to dismiss the Complaint is granted. The Complaint is dismissed without prejudice.

**IT IS SO ORDERED.**

---

[73] *See Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *18 (Del. Ch. Sept. 10, 2015) (granting motion to dismiss for lack of subject matter jurisdiction and dismissing without prejudice); *Carder v. Carl M. Freeman Cmtys., LLC*, 2009 WL 106510, at *8 (Del. Ch. Jan. 5, 2009) (same). Because I am granting the motion to dismiss under Rule 12(b)(1), not Rule 12(b)(6), Rule 15(aaa) does not apply and so the dismissal is not presumed to be with prejudice.