# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALLIANCE COMPRESSORS LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2019-0186-KSJM |
| LENNOX INDUSTRIES INC., a Delaware corporation, and ALLIED AIR ENTERPRISES LLC, a Delaware limited liability company, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 23, 2019
Date Decided:  January 6, 2020

Jon E. Abramczyk, D. McKinley Measley, Alexandra M. Cumings, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; James F. Bennett, John D. Comerford, DOWD BENNETT LLP, St. Louis, Missouri; *Counsel for Plaintiff Alliance Compressors LLC*.

Richard P. Rollo, Travis S. Hunter, Alexandra M. Ewing, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Eric B. Halper, Virginia I. Weber, McKOOL SMITH P.C., New York, New York; *Counsel for Defendants Lennox Industries Inc. and Allied Air Enterprises LLC*.

**McCORMICK, V.C.**

In 1996, the defendants agreed to purchase from the plaintiff a minimum percentage of the total number of compressors that the defendants required to manufacture air conditioners. The contractual purchase obligation ran until 2046. In 2017, the defendants notified the plaintiff that the defendants intended to calculate their contractual purchase obligation differently than they had in the past. This new method of calculation would allegedly permit the defendants to avoid purchasing the plaintiff's compressors altogether.

The plaintiff commenced this litigation claiming that the defendants' new method of calculating their purchase obligation constitutes a breach of the agreement and requesting that the Court award damages, award declaratory relief, and order specific performance. The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the claim for specific performance is insufficient to invoke this Court's equitable jurisdiction.

This decision concludes that the defendants are correct. When assessing whether a request for equitable relief is sufficient to confer equitable jurisdiction, this Court views the allegations objectively to determine whether there is a genuine need for equitable relief. An objective analysis of the allegations in the plaintiff's complaint reveals that monetary damages and declaratory relief would be sufficient to remedy the alleged harm. Accordingly, this decision grants the defendants' motion.

1

## I.   FACTUAL BACKGROUND

The background facts are from the Verified Complaint for Specific Performance ("Complaint")[1] and the documents it incorporates by reference.

### A.   The Supply Agreement

Plaintiff Alliance Compressors LLC ("Alliance" or "Plaintiff") is a Delaware limited liability company with its principal place of business in Louisiana. Formed in 1993 by large air conditioner manufacturers, Alliance's sole business purpose is to make "scroll" compressors for use in residential and commercial air conditioners manufactured by its members. Alliance's members include Defendant Lennox Industries Inc., and its subsidiary, Defendant Allied Air Enterprises LLC (together, "Lennox" or "Defendants"), who collectively own a 24.5 percent stake in Alliance.

Under a Purchase and Supply Agreement dated December 31, 1996 (the "Supply Agreement"), Lennox agreed to purchase from Alliance a certain minimum percentage of the total number of compressors that Lennox requires for its business until December 31, 2046.

The Supply Agreement requires Lennox to "use all commercially reasonable efforts to purchase from [Alliance] a number of Products equal to the applicable Target Level,"[2] where the term "Target Level" means "in any year, a number of

---

[1] C.A. No. 2019-0186-KSJM, Docket ("Dkt.") 1, Verified Compl. for Specific Performance ("Compl.").

[2] *Id.* ¶ 20.

Products equal to the product of (i) the Total Usage for such year multiplied by (ii) the Purchase Commitment Percentage for such year."[3]  Relevant to this dispute, the term "Total Usage" is defined as "the total number of compressors (whether in scroll, reciprocating, or other form) in the 1½ to 7 ton range that are used in such year by [Lennox] to satisfy the production needs of the Business."[4]

### B.  Lennox Changes the Method of Calculating Its Purchase Obligation Under the Supply Agreement.

More than twenty years after the Supply Agreement's execution, on October 26, 2017, Lennox notified Alliance that Lennox would calculate its Total Usage differently than it had in the past.[5]  Rather than including "the total number of compressors (whether in scroll, reciprocating, or other form)" in its calculation,[6] Lennox explained that it would include "only compressor types that [Alliance] manufactures."[7]  Plaintiff alleges that this method of calculating Total Usage would permit Lennox to avoid any sort of purchase obligation under the Supply Agreement in the event Lennox shifted to exclusively using non-scroll compressors—

---

[3] *Id.*

[4] *Id.* ¶ 21 (emphasis removed); Dkt. 12, Pl. Alliance Compressors LLC's Opp'n to Defs.' Mot. to Dismiss or Stay ("Pl.'s Opp'n") Ex. C., at 5.

[5] This decision refers to this notification as the "October 2017 Notification."

[6] Compl. ¶ 21 (emphasis removed); Pl.'s Opp'n Ex. C, at 5.

[7] Compl. ¶ 29.

compressor types that Alliance *does not* manufacture—in its manufacturing business.

### C. Lennox Files a Lawsuit in the Delaware Superior Court.

After contractually required mediation proved unsuccessful,[8] Lennox filed an action against Alliance in Delaware Superior Court (the "Superior Court Action") on March 5, 2019. In the Superior Court Action, Lennox seeks a declaration that its interpretation of the Supply Agreement is valid.[9] Two days after Lennox filed the Superior Court Action, on March 7, 2019, Alliance filed the present action in the Court of Chancery. On April 1, 2019, Alliance moved to dismiss the complaint in the Superior Court Action, or in the alternative, to stay that action in favor of this one.[10] On June 11, 2019, the Superior Court judge stayed the Superior Court Action until this decision issued.[11]

---

[8] The Supply Agreement contains a dispute resolution clause requiring the parties to attempt to resolve their disputes using certain dispute resolution procedures delineated in Alliance's operative LLC Agreement. Pl.'s Opp'n Ex. C, at 9; *id.* Ex. D, at 77–78. Lennox invoked that contractual dispute resolution mechanism, at least as to certain of the issues raised in the Complaint. Def.'s Opening Br. at 6–7; Pl.'s Opp'n at 6–7. The mediation that followed was unsuccessful. Def.'s Opening Br. at 7; Pl.'s Opp'n at 7.

[9] Dkt. 11, Aff. of Alexandra M. Ewing, Esq. in Supp. of Defs.' Mot. to Dismiss ("Ewing Aff.") Ex. 4, Prayer for Relief ¶ A. The Court takes judicial notice of the existence of the Superior Court Action pursuant to Rule 202(d)(1)(C) of the Delaware Rules of Evidence. D.R.E. 202(d)(1)(C) ("The court may, without request by a party, take judicial notice of . . . the records of the court in which the action is pending and of any other court of this State . . . .").

[10] Ewing Aff. Ex. 9.

[11] Pl.'s Opp'n Ex. A.

## D. Alliance Commences This Litigation.

As discussed above, Alliance filed this action on March 7, 2019. The Complaint asserts three claims against Lennox. The first claim alleges that Lennox breached the Supply Agreement and requests that the Court order specific performance of the contract. The second claim alleges that Lennox anticipatorily repudiated the Supply Agreement by virtue of the October 2017 Notification. The third claim seeks a declaration that,

> for the life of the Supply Agreement, Lennox shall purchase from Alliance at least the Purchase Commitment Percentage of the total number of compressors (whether in scroll, reciprocating or other form) in the 1 ½ to 7-ton range that are used in any year by Lennox to satisfy the production needs of its Business in North and Central America, whether or not those compressor types are manufactured by Alliance.[12]

In addition to an order for specific performance and declaratory relief, Plaintiff seeks damages and attorneys' fees.[13]

Defendants moved to dismiss or to stay the action in the alternative. The parties fully briefed the motion[14] and the Court heard oral arguments on October 15,

---

[12] Compl. Prayer for Relief ¶ 3.

[13] *Id.* ¶¶ 4–5.

[14] Defs.' Opening Br.; Pl.'s Opp'n; Dkt. 17, Defs.' Reply Br. in Further Supp. of Their Mot. to Dismiss or Stay.

2019.[15] At that hearing, the Court requested supplemental briefing, which the parties provided by October 23, 2019.[16]

## II. LEGAL ANALYSIS

Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction. "As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[17]

This case does not implicate the first or third bases for this Court's subject matter jurisdiction because the Complaint asserts common law claims sounding in contract.[18] Thus, Plaintiff's request for specific performance is the only potential basis for this Court's equitable jurisdiction. In support of dismissal, Defendants

---

[15] Dkt. 31, Oral Arg. on Defs.' Mot. to Dismiss or Stay.

[16] Dkt. 29, Letter to Vice Chancellor McCormick from Jon E. Abramczyk Enclosing Cases Not Cited in Pl.'s Br.; Dkt. 30, Letter to The Honorable Kathaleen St. Jude McCormick from Travis S. Hunter, Esquire Regarding Resp. to Pl. Alliance Compressors LLC's October 17, 2019 Letter Submitting Cases it Referenced During Oral Arg. on Lennox's Mot. to Dismiss.

[17] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citing 10 *Del. C.* §§ 341, 342).

[18] Compl. ¶¶ 32–55 (asserting claims for breach of contract, anticipatory repudiation, and declaratory judgment concerning contractual obligations).

6

argue that Plaintiff's request for specific performance is insufficient to confer subject matter jurisdiction because Plaintiff has an adequate remedy at law.

"Although specific performance is an equitable remedy upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief."[19] In order to prevent plaintiffs from praying "for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery" where a complete remedy otherwise exists,[20] the Court "must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain."[21] The analysis "requires 'a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate.'"[22] An adequate remedy at law is one that

---

[19] *Candlewood*, 859 A.2d at 997.

[20] *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009) (quoting *Christiana Town Ctr. LLC v. New Castle Cty.*, 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003)).

[21] *Candlewood*, 859 A.2d at 997 (citing *Diebold Comput. Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586 (Del. 1970); *Hughes Tool, Co. v. Fawcett Publ'ns Inc.*, 297 A.2d 428 (Del. Ch. 1972), *rev'd on other grounds*, 315 A.2d 577 (Del. 1974)).

[22] *Id.* (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).

will "afford the plaintiff full, fair, and complete relief."[23]  "The party seeking an equitable remedy has the burden to show that a legal remedy would be inadequate."[24]

To meet its burden, Plaintiff argues that money damages in this case would be impracticable and not readily quantifiable.  Because the Supply Agreement runs for more than twenty-five years into the future, thereby imposing on Lennox an annual obligation to purchase a certain percentage of Alliance compressors, Plaintiff argues that absent specific performance, it would be deprived of the expected benefit of its bargain—guaranteed sales—under the Supply Agreement.  Plaintiff further asserts that, although it is entitled to money damages for harm already sustained, money damages would be difficult to quantify for Lennox's ongoing and future breaches of the Supply Agreement.  This is because Plaintiff's sales to Lennox are based on a percentage of Lennox's Total Usage, which may vary from year to year for the next twenty-five years.  In the same vein, Plaintiff argues that having to file annual lawsuits to enforce Lennox's contractual obligations for the next twenty-five years would be unjust and impracticable.

---

[23] *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995) (quoting *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 315 A.2d 577, 579 (Del. 1974)).

[24] *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2004 WL 1192602, at *2 (Del. Ch. May 28, 2004).

8

Plaintiff's arguments resemble those that Vice Chancellor Glasscock rejected in *Athene Life & Annuity Co. v. American General Life Insurance Co.*[25] In *Athene*, the plaintiff held a beneficial interest in two corporate-owned life insurance policies (the "COLIs") issued by the defendant.[26] Those policies required the defendant to pay benefits to the plaintiff upon the death of certain covered employees.[27] The transaction documents governing the COLIs prohibited the defendant from modifying, amending, or changing them "in any way which could change in any material respect the rights of [the plaintiff] and/or the terms and conditions of the transactions reflected [therein]."[28] Notwithstanding this prohibition, the defendant "purported to unilaterally amend" the transaction documents to "cap" an input relevant to the death benefit paid.[29] The cap reduced the death benefit by approximately $9,000.[30]

The plaintiff filed an action in this Court claiming that the defendant breached the transaction documents by unilaterally amending those documents and subsequently underpaying the death benefit.[31] The plaintiff asserted several claims

---

[25] 2019 WL 3451376 (Del. Ch. July 31, 2019).

[26] *Id.* at *2.

[27] *Id.*

[28] *Id.*

[29] *Id.* at *3.

[30] *Id.*

[31] *Id.*

9

in its complaint, two of which sought equitable relief.  The first was a claim for breach of contract that sought money damages and specific performance.  The second sought a declaration prohibiting the defendant from implementing the cap, coupled with an injunction prohibiting the defendant from breaching in the future.[32]

Vice Chancellor Glasscock raised the issue of subject matter jurisdiction *sua sponte*, and the defendant moved to dismiss on that basis.[33]  To establish subject matter jurisdiction, the *Athene* plaintiff argued that an adequate remedy at law did not exist.  While the plaintiff conceded that declaratory relief and money damages would remedy any breach to date, the plaintiff insisted that such legal relief would fail to prevent the defendant from otherwise amending the transaction documents to "eviscerate" the plaintiff's contractual rights in the future.[34]  The plaintiff argued that specific performance was required "to prevent [the defendant] from taking further actions that [would] irreparably harm [the plaintiff] by denying it the unique, negotiated benefits of the [COLIs] as well as its investment in the . . . [p]ortfolio, for which [the plaintiff] contracted and which are difficult or impossible to quantify."[35]

---

[32] *Id.*

[33] *Id.* at *1.

[34] *Id.* at *7.

[35] *Id.* at *6.

Absent specific performance, the plaintiff argued, the defendant's conduct would "necessitate further litigation."[36]

In rejecting the plaintiff's argument, the Vice Chancellor asked: "If the Plaintiff[] prevail[s] on [its] contract claim . . . , and if the Plaintiff then recovers damages, what is left for equity to enforce?"[37] The Vice Chancellor concluded that the plaintiff's specific performance claim boiled down to a request that the Court make a finding of contractual breach and then direct the defendant to "go, and breach no more,"[38] which was "entirely unnecessary" to remedy the alleged breach.[39] As to the claim for injunctive relief, the Vice Chancellor observed that this Court "does not enjoin hypothetical future breaches of contract," and that nothing in the record indicated "special circumstances compel[ling] equity to act."[40]

In reaching this conclusion, *Athene* distinguished a 1970 Delaware Supreme Court case, *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*[41] In *Diebold*, the defendant agreed to extend a revolving line of credit to the plaintiff for a period of ten years, beginning in 1967.[42] At some point during the ten-year period,

---

[36] *Id.* at *7.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] 267 A.2d 586 (Del. 1970); *see Athene*, 2019 WL 3451375, at *9.

[42] *Diebold*, 267 A.2d at 588.

it became "of utmost importance" for the plaintiff to diversify its business.[43] When the plaintiff informed the defendant of its intention to diversify, the defendant responded that it viewed any such action as prohibited by the terms of the loan agreement and as "default" thereunder.[44] The alleged consequence would be the acceleration of the $70 million debt contemplated in the loan agreement and foreclosure on the collateral that secured it, which would make it "impossible for [the] plaintiff to continue to function as a business enterprise."[45] The plaintiff disagreed with the defendant's reading of the loan agreement and intended to pursue diversification.[46]

The plaintiff sought an injunction from this Court prohibiting the defendant from declaring default under the loan agreement if the plaintiff pursued diversification and a declaration that the plaintiff's diversification would not violate the terms of the loan agreement.[47] The Court of Chancery found that a declaratory judgment in Superior Court would provide an adequate remedy at law and dismissed the case for lack of subject matter jurisdiction.[48]

---

[43] *Id.*

[44] *Id.* at 588.

[45] *Id.* at 589

[46] *Id.*

[47] *Id.*

[48] *Id.* at 589–90.

12

The Delaware Supreme Court reversed on appeal holding that the plaintiff's request for injunctive relief conferred equitable jurisdiction on the Court of Chancery.[49] In light of the plaintiff's decision to proceed with diversification, the defendant's insistence on its right to declare a default, the severe implications of such a declaration on the plaintiff's business, and the unfazed plaintiff's intention to proceed regardless, the Court found that a "collision course" was imminent.[50] Such a collision course, the Court explained, was the kind "equity serves to avoid in the exercise of its traditional jurisdiction [to] prevent[] a threatened breach of contract."[51]

Distinguishing *Diebold*, the Court in *Athene* found no similar "collision course" compelling equity to act:

> Unlike *Diebold*, here the Plaintiff[] allege[s] that breach has already occurred and caused damages, remediable at law; the Plaintiff['s] position is that, given the ongoing nature of the contract, the Defendant[] may breach again. I have already rejected the latter as a ground for equitable jurisdiction. What is left is a contract action, at law.[52]

---

[49] *Id.* at 590.

[50] *Id.*

[51] *Id.*

[52] 2019 WL 3451376, at *9.

13

The *Athene* Court noted that the potential for irreparable harm in the *Diebold* case—given the "fundamental impact" of a declaration of default on the plaintiff's business—was not present in the record before it.[53]

The reasoning of *Athene* is persuasive and the same outcome is appropriate in this case. As in *Athene*, the Complaint in this case alleges that Lennox has already breached the Supply Agreement by failing to include the total number of compressors used by Lennox in the Total Usage calculation.[54] Money damages will suffice to remedy any alleged breach to date,[55] and declaratory relief will establish the proper method of calculating Total Usage under the Supply Agreement. A decision clarifying the Supply Agreement, identifying any breaches thereof, and imposing damages would "change[] the incentives of the parties to the contract."[56] Any future breach following a court's ruling would be hypothetical, such that instructing Lennox to "go, and breach no more"[57] would be "entirely unnecessary"[58] and thus inappropriate.

---

[53] *Id.*

[54] Compl. ¶ 36.

[55] *See* Pl.'s Opp'n at 12 ("Alliance is entitled to money damages for damages already sustained from Lennox's breaches to date. These damages are readily quantifiable.").

[56] *Athene*, 2019 WL 3451376, at *6.

[57] *Id.* at *7

[58] *Id.*

14

Distinguishing *Diebold* serves as a useful cross-check. As discussed above, the plaintiff in *Diebold* faced a threat of imminent irreparable harm in the form of acceleration, foreclosure, and a complete business shut down.[59] The breach had not yet occurred,[60] but the "approaching harm implicated equity."[61] Because the plaintiff sought to avoid that inevitable "collision course," the invocation of equitable jurisdiction was appropriate.[62] In this case, there is no analogous "approaching harm" or imminent "collision course" requiring equity to intervene. As Plaintiff alleges, the breach has already occurred. And the ongoing nature of the Supply Agreement does not present the sort of "special circumstance[]"[63] existing in *Diebold* that would justify an exercise of this Court's equitable jurisdiction.

In sum, Plaintiff's request for specific performance does not confer subject matter jurisdiction on this Court.[64]

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss under Court of Chancery Rule 12(b)(1) is GRANTED.

---

[59] *Diebold*, 267 A.2d at 589.

[60] *Id.* at 589.

[61] *Athene*, 2019 WL 3451376, at *9.

[62] *Diebold*, 267 A.2d at 590.

[63] *Athene*, 2019 WL 3451376, at *8.

[64] Because this Court lacks subject matter jurisdiction over this action, this decision does not reach Defendants' alternative arguments for dismissal.

15